STATE of Wisconsin, Plaintiff-Respondent,††

v.

Bill Paul MARQUARDT, Defendant-Appellant.†

Court of Appeals

*No. 01–0065–CR. Submitted on briefs June 11, 2001.—Decided August 21, 2001.*

## 2001 WI App 219

(Also reported in 635 N.W.2d 188.)

† Petition to review denied 11-27-01.
†† Petition to cross-review denied 11-27-01.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James B. Connell* of *Crooks, Low, Connell & Rottier, S.C.* of Wausau.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. In this interlocutory appeal, Bill Paul Marquardt appeals from an order (1) denying his motion to suppress evidence seized pursuant to a search warrant for his home; (2) denying his request for a *Franks*[1] hearing; and (3) denying his motion to suppress evidence from a warrantless search of his vehicle.

¶ 2. We conclude first that there was insufficient probable cause to justify the search warrant for Marquardt's home. Because our supreme court recently adopted the good faith exception to the exclusionary rule, *see State v. Eason*, 2001 WI 98, ¶ 74, 245 Wis. 2d 206, 629 N.W.2d 625, we reverse that portion of the court's order and remand for a determination of whether the good faith exception to the exclusionary rule applies in this case. Second, we do not address Marquardt's request for a *Franks* hearing because we have concluded that there was insufficient probable cause to support the search warrant. Finally, we conclude that the automobile exception to the Fourth Amendment search warrant requirement applies to the warrantless search of Marquardt's vehicle. Thus, we affirm that portion of the court's order denying suppression of evidence from Marquardt's vehicle on warrantless search grounds.

## BACKGROUND

¶ 3. On March 13, 2000, Alfred Marquardt found his wife, Mary, dead in their garage. Mary had been shot and stabbed. Officers investigating the death immediately obtained a warrant to search the home.

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

¶ 4. On March 15, officers obtained a warrant to search the home of Mary and Alfred's son, Bill Marquardt. Officers conducting the search found dead animals at Bill Marquardt's home and subsequently obtained an arrest warrant for Marquardt on a charge of cruelty to animals.

¶ 5. On March 18, Marquardt was arrested at his home. At the time of his arrest, Marquardt's locked vehicle was parked in his driveway. In the hours after Marquardt was arrested, the Eau Claire County Sheriff's Department arranged for the vehicle to be hauled to the department, where it was then searched. Two days later, the vehicle was transported to the State Crime Laboratory in Madison where it was again searched. No warrant was ever obtained for the search and seizure of the vehicle.

¶ 6. On May 4, Marquardt was charged with one count of first-degree intentional homicide and one count of possession of a firearm by a felon. Following a preliminary hearing and bindover, Marquardt filed several motions to suppress evidence. Two motions are relevant to this appeal: a motion to suppress evidence that was seized from Marquardt's home pursuant to the March 15 search warrant and a motion to suppress evidence that was seized from Marquardt's car without a search warrant.[2]

¶ 7. The circuit court conducted motion hearings on July 31 and December 8. At the first hearing, the

---

[2] Marquardt sought to exclude not only evidence seized on March 15, 2000, but also all physical evidence seized from Marquardt's premises, person or vehicles that was discovered as a result of the issuance and execution of the March 15 search warrant. Thus, Marquardt challenged the admission of evidence seized from the vehicle found at his home based on two independent grounds: (1) as "fruit of the poisonous tree" (the

court held that the search warrant for Marquardt's home was issued upon sufficient probable cause and denied Marquardt's request for a *Franks* hearing on the issue of whether the application for a search warrant contained material misstatements and omissions. Following the second day of hearings, the court issued a memorandum decision denying the motion to suppress evidence seized from the vehicle, concluding that the search was valid under the automobile exception to the Fourth Amendment's warrant requirement.

¶ 8. Marquardt seeks reversal of the circuit court's order finding probable cause in the search warrant application, denying his request for a *Franks* hearing, and denying the suppression of evidence derived from the warrantless vehicle search. By order of January 24, 2001, we granted Marquardt's request for leave to appeal the court's order.

### STANDARD OF REVIEW

¶ 9. The Fourth and Fourteenth Amendments to the United States Constitution and art. I, § 11, of the Wisconsin Constitution guarantee Wisconsin citizens freedom from "unreasonable searches and seizures." *State v. Griffith*, 2000 WI 72, ¶ 25, 236 Wis. 2d 48, 613 N.W.2d 72. The question whether police conduct violated the constitutional guarantee against unreasonable searches and seizures is a question of constitutional fact. *Id.* at ¶ 23. On review, this court gives deference to the trial court's findings of evidentiary or historical fact, but determines the question of constitutional fact independently. *Id.*

---

tree being the March 15 search warrant); and (2) as the product of an unconstitutional, warrantless search and seizure of his vehicle.

**DISCUSSION**

## I. Issuance of the initial search warrant for Marquardt's house

█

¶ 10. Marquardt argues that the March 15 search warrant for his house was issued based on insufficient probable cause. A search warrant may issue only when a neutral and detached magistrate (or judge, as in this case) finds probable cause to believe that evidence of a crime may be found in a particular place. *See State v. Ward*, 2000 WI 3, ¶ 21, 231 Wis. 2d 723, 604 N.W.2d 517.

█

¶ 11. Whether there is probable cause is determined by examining the "totality of the circumstances." *Id.* at ¶ 26. A finding of probable cause is a common-sense test:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at ¶ 23 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

█

¶ 12. A probable cause determination must be based upon what a reasonable judge can infer from the information presented by the police. *Ward*, 2000 WI 3 at ¶ 26. The issuing judge ordinarily considers only the facts set forth in supporting affidavits accompanying the warrant application. *See id.*

¶ 13. It is the duty of the reviewing court to ensure that the judge had a substantial basis to conclude that probable cause existed. *Id.* at ¶ 21. We must consider whether, objectively viewed, the record before the judge provided sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that they will be found in the place to be searched. *Id.* at ¶ 27. We accord great deference to the determination made by the warrant-issuing judge. *Id.* at ¶ 21. Thus, the judge's determination will stand unless the defendant establishes that the facts are clearly insufficient to support a probable cause finding. *Id.*

¶ 14. With these standards in mind, we examine the facts that were presented to the judge. The judge did not take any testimony in support of the search warrant application. Instead, only written documents were provided. The application for Marquardt's home, dated March 15, was completed by a detective from the Eau Claire County Sheriff's Department, and was based upon the following statement of facts:

> Affiant reports that on March 15, 2000, he received a copy of an affidavit for search warrant sworn and executed in Chippewa County on March 13, 2000, with respect to the suspected homicide of Mary J. Marquardt. A copy of said affidavit and search warrant is attached and hereby incorporated by reference.[3]

---

[3] Marquardt in his reply brief suggests that the March 13 application and warrant may not have been provided to the judge with the March 15 application. We have reviewed the transcript of the motion hearing and have found no indication that defense counsel, the State or the circuit court expressed

> Investigator Price reports that after finding the body of Mary J. Marquardt, he spoke with her husband, Alfred E. Marquardt. Mr. Marquardt informed him that he and Mary have a son, Bill Marquardt, who, since the location of Ms. Marquardt's body had not been seen or heard from. Alfred Marquardt further informed Investigator Price that Bill Marquardt owned with Alfred Marquardt a cabin in which Bill resided at E27505 County Highway M, Town of Fairchild, County of Eau Claire, Wisconsin.
>
> Investigator Price further reports that in examining the body of Mary J. Marquardt and the scene where she was found, it appeared as though among the wounds incurred by her was a knife wound. Also at the scene, officers were able to locate a number of footprints that may be suitable for comparison with the shoes that made them.
>
> Investigator Barnier reports that in checking Eau Claire County tax rolls, he learned that a cabin, storage building, pumphouse and out-house located at E27505 County Highway M . . . are owned by Alfred and Bill Marquardt.

any doubt that the March 13 application was attached. Indeed, the circuit court referred to the fact that the March 13 warrant was attached to the March 15 application and asked the State, "Is there anything in there that ties the defendant to the homicide? I went through it, and I didn't see anything that did so, but I want to know if I missed anything." Because Marquardt raises this factual issue for the first time in his reply brief, we decline to address it. *See State v. Mata*, 230 Wis. 2d 567, 576 n.4, 602 N.W.2d 158 (Ct. App. 1999) (court will not address issues raised for the first time in a reply brief). Instead, we will assume that the March 13 application and warrant were attached to the March 15 application.

¶ 15. The search warrant application sought permission to search for ammunition; firearms; clothing containing Mary's hair, blood or fibers; knives; shoes; and documents that may indicate Marquardt's whereabouts on or after March 13.

¶ 16. The March 13 search warrant for Mary's home that was referred to in the March 15 application contained the following statement of facts:

> Inv[estigator] Price reports that on March 13, 2000, Chippewa County Sheriff's Dispatch received a 911 call from 11766 State Hwy 178, Chippewa Falls, Township of Eagle Point. The caller identified himself as Alfred E. Marquardt. . . . Marquardt reported that his wife was apparently dead at the residence.
>
> Price continued that he responded to the Marquardt home and met with Marquardt. Marquardt relayed that he had left home at about 7 AM that morning and tried to call home about 11:50. The phone was busy and remained so the remainder of the day. Marquardt stated that he left work early and returned home because of the busy phone and upon arrival, found his wife, Mary J. Marquardt covered with a blanket in the garage. She was cold and unresponsive and appeared to have a head wound.
>
> Price reports that a shell casing, tentatively identified as 9 mm, was observed on the premises.

¶ 17. Marquardt argues that these statements are "devoid of any information from which it could be reasonably concluded that evidence of a crime could be located at [Marquardt's] residence, which was located in a different county than his parents' residence, where his mother's body was found." He notes that the fact no one had seen or heard from him raises no reasonable inference that he was involved in the crime. "Even if

absence could be considered a reason for suspicion, the police officers in this case had nothing more than a guess that contraband or evidence of a crime would be found in [Marquardt's] home." He argues, citing *United States v. Schultz*, 14 F.3d 1093, 1097–98 (6th Cir. 1994), that to find probable cause based on these facts "would be to invite general warrants authorizing searches of any property owned, rented, or otherwise used by a criminal suspect—just the type of broad warrant the Fourth Amendment was designed to foreclose."

¶ 18. In response, the State admits that the facts recited in the affidavits are "scant," but argues that they are not so thin as to be insufficient for probable cause. The State points to several facts in the affidavits: (1) Mary's telephone was off the hook the day she was killed, suggesting "that the perpetrator had been inside the residence"; (2) Mary was shot and stabbed, and no valuables were taken, suggesting the crime was an intentional homicide, as opposed to a break-in, and that the perpetrator was probably a male;[4] (3) there were footprints at the crime scene that could be compared with footware if any are located; (4) Mary was covered with a blanket, which suggests the perpetrator knew, or was familiar with the victim; and (5) Marquardt's father stated that his son had not been heard from since Mary's body was discovered.

¶ 19. Although these facts may lead a reasonable police officer to pursue further investigation of Marquardt, we conclude that there is nothing in the facts to tie Marquardt to the crime, much less to tie his home to the crime. Although the warrant-issuing judge may

---

[4] The State cites several authorities for the general proposition that "males kill in overwhelming numbers compared to females, and they kill with firearms."

have been provided sufficient facts to excite an honest belief in a reasonable mind that the particular types of objects sought—including shoes, knives, and guns—could be linked with the commission of the crime, there was no fact that suggested those items would be found in Marquardt's cabin. We conclude that Marquardt has established that the facts are clearly insufficient to support a probable cause finding and, therefore, we reject the judge's probable cause determination. *See Ward*, 2000 WI 3 at ¶ 2.

¶ 20. Until recently, this conclusion would end our analysis, and we would simply reverse the circuit court's order denying Marquardt's motion to suppress. However, as a result of our supreme court's decision in *Eason*, we instead reverse and remand for a determination of whether the good faith exception to the exclusionary rule applies in this case.

¶ 21. In *Eason*, the court adopted the good faith exception to the exclusionary rule recognized in *United States v. Leon*, 468 U.S. 897, 918–20 (1984), adding some additional protections required by art. I, § 11, of the Wisconsin Constitution. *See Eason*, 2001 WI 98 at ¶ 74. *Eason* stated:

> We hold that where police officers act in objectively reasonable reliance upon the warrant, which had been issued by a detached and neutral magistrate, a good faith exception to the exclusionary rule applies. We further hold that in order for a good faith exception to apply, the burden is upon the State to show that the process used in obtaining the search warrant included a significant investigation and a review by either a police officer trained and knowledgeable in the requirements of probable cause and reasonable suspicion, or a knowledgeable government attorney. We also hold that this process is required by Article I, Section 11 of the Wisconsin Constitution, in addition to those protec-

tions afforded by the good faith exception as recognized by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, ·82 L.Ed.2d 677 (1984).

*Id.*

¶ 22. *Eason* was decided after briefing was completed in this case, although the State in the circuit court and on appeal argued for application of a good faith exception to the exclusionary rule. We conclude that the State has preserved this issue for appeal. Accordingly, we reverse that portion of the circuit court's order denying Marquardt's motion to suppress and remand for a good faith hearing consistent with *Eason.*

¶ 23. If the circuit court ultimately concludes that the good faith exception to the exclusionary rule is inapplicable, the court must issue a suppression order with respect to the March 15 search. In that case, the court must also determine the facts surrounding the subsequent searches to determine if they were tainted by the initial unlawful search of Marquardt's residence and, if so, issue a suppression order consistent with its findings. *See State v. Durbin,* 170 Wis. 2d 475, 486, 489 N.W.2d 655 (Ct. App. 1992).

## II. Marquardt's request for a *Franks* hearing

¶ 24. The circuit court denied Marquardt's request for a *Franks* hearing. A *Franks* hearing allows a defendant to contest the finding of probable cause to issue a search warrant in a hearing if he or she "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in

the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *State v. Marshall*, 92 Wis. 2d 101, 112, 284 N.W.2d 592 (1979) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). Marquardt in his briefs stated that this court need not consider his *Franks* hearing request if we conclude that the warrant lacks probable cause. Because we have concluded that there was insufficient probable cause to support the March 15 search warrant application, we will not address the *Franks* issue.

### III. Warrantless search of Marquardt's vehicle

¶ 25. Marquardt seeks suppression of the evidence found in the vehicle seized from his home at the time of his arrest on two grounds: that it is "fruit of the poisonous tree" and that the vehicle was unlawfully seized and searched without a warrant. The circuit court will address the first ground if it determines that the good faith exception to the exclusionary rule does not apply to the March 15 search warrant. Resolution of the second ground requires us to consider the "automobile exception" to the warrant requirement of the Fourth Amendment of the United States Constitution and art. I, § 11, of the Wisconsin Constitution.

¶ 26. Warrantless searches of homes are "presumptively unreasonable," but searches of vehicles are not. *State v. Pallone*, 2000 WI 77, ¶ 59, 236 Wis. 2d 162, 613 N.W.2d 568. During the last seventy-five years, the United States Supreme Court has recognized that the unique nature of automobiles sets them apart from other areas protected from warrantless searches under the Fourth Amendment. *Id.* This exception to the general rule requiring a warrant for searches and seizures is known as the automobile exception.

## A. Federal case law on the automobile exception

¶ 27. The elements required to satisfy the automobile exception have changed over time. In *Carroll v. United States*, 267 U.S. 132 (1925), the court held that three elements were required to satisfy the automobile exception to the warrant requirement: (1) a mobile vehicle; (2) probable cause to believe the vehicle contained evidence of a crime; and (3) impractibility of obtaining a search warrant. *See id.* at 153–60.

¶ 28. In *California v. Carney*, 471 U.S. 386, 388 (1985), the court effectively eliminated the *Carroll* requirement of "impractibility to obtain a search warrant," explaining that the exigency inherent in the "ready mobility" of a vehicle, coupled with the "lesser expectation of privacy" in a readily mobile vehicle, excuses the need to secure a search warrant. *See Carney*, 471 U.S. at 390–91.

¶ 29. If there was any doubt about the elimination of the impractibility requirement, it was resolved by *Pennsylvania v. Labron*, 518 U.S. 938 (1996) (per curiam). In *Labron*, the Court overturned the Pennsylvania Supreme Court's conclusion that warrantless searches of automobiles are limited to cases where unforeseen circumstances involving the search of an automobile are coupled with the presence of probable cause. *See id.* at 940. The Court stated:

> Our first cases establishing the automobile exception to the Fourth Amendment's warrant requirement were based on the automobile's "ready mobility," an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear. . . . More recent cases provide a further justification: the individual's reduced expectation of privacy in an auto-

mobile, owing to its pervasive regulation. . . . If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more.

*Id.*

¶ 30. The Supreme Court reiterated its conclusion three years later in *Maryland v. Dyson,* 527 U.S. 465 (1999) (per curiam). The Court rejected the state court's conclusion that the automobile exception requires a separate finding of exigency in addition to a finding of probable cause. *Id.* at 467. The Court explained:

> The Fourth Amendment generally requires police to secure a warrant before conducting a search. . . . As we recognized nearly 75 years ago . . . there is an exception to this requirement for searches of vehicles. And under our established precedent, the "automobile exception" has no separate exigency requirement. We made this clear in *United States v. Ross,* 456 U.S. 798, 809 . . . (1982), when we said that in cases where there was probable cause to search a vehicle "a search is not unreasonable if based on facts that would justify the issuance of a warrant, *even though a warrant has not been actually obtained.*" (Emphasis added.) . . . [In *Labron*], we repeated that the automobile exception does not have a separate exigency requirement: "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more."

*Id.*

¶ 31. Thus, under current federal law, the warrantless search of a vehicle does not offend the Fourth Amendment if (1) there is probable cause to search the vehicle; and (2) the vehicle is readily mobile. *See id.*

Issues concerning whether the police could have obtained a warrant prior to searching are not relevant to the analysis. *See id.*; 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 7.2(b) (3d ed. 1996) (courts uphold warrantless searches with virtually no inquiry into the facts of the particular case, reasoning that whether any kind of exigent circumstances claim could plausibly be put forward is totally irrelevant).

## B. Wisconsin case law on the automobile exception

■

¶ 32. Wisconsin's Constitution also protects Wisconsin's citizens from unreasonable searches and seizures. *See* WIS. CONST. art. I, § 11. Although the United States Supreme Court sets the minimal constitutional standards applicable to the states through the Fourteenth Amendment, Wisconsin's Supreme Court is free to interpret our constitution in a manner that affords greater protections. *State v. Tompkins*, 144 Wis. 2d 116, 132, 423 N.W.2d 823 (1988). However, *Tompkins* added,

> where the language of the state constitutional provision at issue is virtually identical with that of its federal counterpart, as here, we have traditionally interpreted our constitution consistent with the protections of the federal constitution as interpreted by the United States Supreme Court. This is particularly true of this court's interpretation of the Wisconsin search and seizure provision.

*Id.* at 133.

## C. Application of the automobile exception

¶ 33. Applying these principles to the instant case, we must consider (1) whether there was probable

cause to search Marquardt's vehicle; and (2) whether the vehicle was readily mobile. *See Dyson*, 527 U.S. at 467. We conclude: (1) that there was probable cause to search the vehicle because Marquardt has not contested that issue; and (2) that the vehicle was readily mobile. Therefore, the automobile exception applies. We also reject Marquardt's two additional challenges to the automobile exception: that the exception applies only to vehicles in public places and that the court should consider the ease with which the officers could have obtained a search warrant in applying the automobile exception.

## 1. Probable cause

¶ 34. Marquardt filed numerous motions to suppress evidence. After the first of two hearings on his motions, the State requested additional time to investigate and present evidence, explaining that the State had not realized that Marquardt was challenging the search of the vehicle on warrantless search grounds as well as "fruit of the poisonous tree" grounds. Marquardt's counsel agreed to continue the hearing.

¶ 35. Prior to the continued motion hearing, the State filed a brief urging the circuit court to deny Marquardt's motion to suppress, arguing that the warrantless search of the vehicle was constitutional under the automobile exception. With respect to probable cause, the State noted: "The defendant's entire argument for the suppression of the evidence seized from the [vehicle] centered on the failure of the police to obtain a search warrant. Implicit in this argument is a concession that the officers had probable cause sufficient to obtain a search warrant."

¶ 36. Marquardt did not file a written response, choosing instead to present his arguments orally after the remaining testimony was taken. We have reviewed the transcript and agree with the State that Marquardt did not challenge the State's assumption that there was probable cause to search the vehicle. Instead, Marquardt contested whether the car's location on a private driveway, as opposed to on public property, satisfied the automobile exception.

¶ 37. Marquardt's apparent concession of the probable cause issue was reflected in the circuit court's written decision, in which the court simply stated that there was probable cause to search the vehicle and concentrated on the single issue raised at the motion hearing: whether there is a "public place" requirement in the automobile exception.

¶ 38. On appeal, Marquardt in his opening brief did not challenge whether there was probable cause to search his vehicle. The State identified this omission in its brief, and also explained why such an argument would lack merit. In his reply brief, Marquardt does not directly respond to the State's assertion that he failed to challenge probable cause, although he notes in a single paragraph:

> The officers did not state that they had probable cause to search the vehicle. In fact, Investigator Price stated that he did not know "that there was anything visible from the exterior of the vehicle that would be classified as contraband" and that there was "suspect information" visible from the exterior of the vehicle. However, he testified that "we were able to see a material on the door, but we had no idea what it was." There was no testimony that any officer even saw the stain until Bill Marquardt's car was transported to the Eau County Sheriff's Department and it was not until the car was

sent to the State Crime Lab in Madison that the stain was determined to be blood. The vehicle[']s prospective value remained uncertain until after the interior[] [was] thoroughly searched and examined.

¶ 39. Based on the record and the briefs, we conclude that to the extent Marquardt attempts to contest probable cause for the first time in his reply brief, he is too late. *See Swartwout v. Bilsie*, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508 (Ct. App. 1981) (Ordinarily, we do not consider arguments raised for the first time in a reply brief.). Not only was the issue not raised in Marquardt's opening brief, it was not raised at the circuit court. Accordingly, we decline to address it. *See Apex Elec. Corp. v. Gee*, 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998) (The oft-repeated rule of Wisconsin appellate practice is that issues not raised in the circuit court generally will not be considered for the first time on appeal.). We therefore conclude that the probable cause prong of the automobile exception has been satisfied.

## 2. "Readily mobile" vehicle

¶ 40. It is undisputed that Marquardt's vehicle was in working order on the day he was arrested. Indeed, an officer testified that law enforcement on March 18 proceeded to Marquardt's home to execute the arrest warrant shortly after a neighbor notified them that he saw Marquardt's car pull into the driveway. However, Marquardt argues that once he was arrested, the vehicle was no longer readily mobile.

¶ 41. We decline to address this argument in detail because Marquardt did not raise this issue at the trial court and has provided us with no authority for his argument. *See id.* at 384; *State v. Shaffer*, 96 Wis. 2d

531, 545–46, 292 N.W.2d 370 (Ct. App. 1980) (we need not consider arguments unsupported by citations to authority). However, we note that our brief survey of the applicable case law assures us that the argument lacks merit.

██

¶ 42. In *United States v. Gallman*, 907 F.2d 639, 641 (7th Cir. 1990), the court addressed the same argument from a defendant who contended that his car was not readily mobile because he had been arrested and the officers had his car key. The court rejected Gallman's reasoning, concluding: "These circumstances do indeed make the car less accessible to Gallman, but they do not make it less mobile." *Id.*, This reasoning is equally persuasive here; Marquardt's arrest would not prevent other unknown individuals from moving the vehicle.

¶ 43. Additionally, we are not concerned by the fact that the car was seized and impounded before it was searched. The Supreme Court has held that the justification to conduct a warrantless search does not vanish once the car has been immobilized. *See United States v. Johns*, 469 U.S. 478, 484 (1985). In short, we are confident that the readily mobile component of the automobile exception has been satisfied.

### 3. Rejection of additional arguments

¶ 44. Marquardt challenges the application of the automobile exception on two additional grounds: that the exception applies only to vehicles in public places and that the court should consider the ease with which the officers could have obtained a search warrant. We reject these arguments.

¶ 45. We first consider Marquardt's contention that the automobile exception is inapplicable because his vehicle was parked in his private driveway at the time it was seized. He argues that the Wisconsin Constitution limits the application of the automobile exception to vehicles found in public places. His argument is based on several Wisconsin Supreme Court cases, beginning with *Tompkins*, 144 Wis. 2d at 128–29.

¶ 46. The *Tompkins* court discussed the applicability of the automobile exception. *Tompkins* included the following quotation from *Carney*:

> When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purpose— temporary or otherwise—the two justifications for the vehicle exception come into play. First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving. Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling.

*Tompkins*, 144 Wis. 2d at 128–29 (quoting *Carney*, 471 U.S. at 392–93). Marquardt seizes on the phrase "found stationary in a place not regularly used for residential purposes" in support of his argument that the automobile exception is inapplicable to him.

¶ 47. In subsequent cases, the court cited *Tompkins* for the proposition that "A warrantless search of an automobile is justified when the police have probable cause to believe that an automobile, found in a public place, contains evidence of a crime; no showing of exigent circumstances is required." *See State v. Weber*, 163 Wis. 2d 116, 137, 471 N.W.2d 187 (1991). This same phrase was repeated in *State v. Caban*, 210 Wis. 2d 597,

607, 563 N.W.2d 501 (1997), and *State v. Secrist*, 224 Wis. 2d 201, 210, 589 N.W.2d 387 (1999).

¶ 48. Despite the "public place" language that appears in these cases, we conclude that the automobile exception is nonetheless applicable to Marquardt. The genesis of the language was *Carney*, which involved the search of a fully mobile motor home located in a public place. *See Carney*, 471 U.S. at 387. United States Supreme Court cases subsequent to *Carney* have not recognized a public place requirement for the automobile exception. *See, e.g., Dyson*, 527 U.S. at 467. Thus, to the extent that *Carney* ever intended to impose a public place requirement, it is no longer applicable.

¶ 49. Marquardt does not argue that federal law imposes a public place requirement. Instead, he essentially contends that Wisconsin, interpreting its own constitution, has chosen to provide greater protection under its own constitution. We disagree. No Wisconsin Supreme Court case has expressly indicated that Wisconsin provides greater protection under the automobile exception. In fact, the court recently restated its commitment to interpreting art. I, § 11, of the Wisconsin Constitution consistently with the Fourth Amendment. *See Eason*, 2000 WI 98 at ¶ 37, 42.[5] Any inter-

---

[5] We recognize that in *State v. Eason*, 2001 WI 98, ¶ 74, 629 N.W.2d 625, the court restated this commitment in support of its decision to adopt the good faith exception established in *United States v. Leon*, 468 U.S. 897, 918–20 (1984), but then actually concluded that art. I, § 11, of the Wisconsin Constitution provides "more protection than the Fourth Amendment provides under the good faith exception as adopted in *Leon.*" *See Eason*, 2001 WI 98 at ¶ 60. This only reinforces our conclusion that our supreme court will generally interpret art. I, § 11 consistent with the Fourth Amendment, but may elect to

pretation requiring that the vehicle be in a public place would be inconsistent with this commitment. Absent an explicit indication that our supreme court is interpreting art. I, § 11, of the Wisconsin Constitution differently than the Fourth Amendment, we will assume that Wisconsin will continue to follow federal precedent concerning the automobile exception.

¶ 50. Finally, we address Marquardt's argument that the police should have obtained a warrant because "[t]here was no danger of the car or any evidence of any crime that may have existed in the car being driven away and destroyed." Marquardt cites *Coolidge v. New Hampshire*, 403 U.S. 443 (1971), where the court rejected application of the automobile exception under similar facts. In *Coolidge*, the defendant was arrested at his home and his two cars were towed to the police station and searched without a warrant, turning up incriminating evidence. *Id.* at 447–48.

¶ 51. The Court noted that because the defendant's cars were parked in a private driveway rather than stopped on a public highway, the opportunity to search was not so "fleeting" as to make a warrant application impracticable. *Id.* at 460. Summarizing its discussion rejecting application of the automobile exception, the Court stated, "Here there was probable cause, but no exigent circumstances justified the police in proceeding without a warrant." *Id.* at 464.

¶ 52. We conclude that while *Coolidge*'s discussion of impractibility may have been relevant in 1971, it ceased to be relevant after *Carney* effectively eliminated

recognize greater protection under the Wisconsin Constitution. When the court has done so, as in *Eason*, such a conclusion has been explicit. *See id.*

the *Carroll* requirement of "impractibility to obtain a search warrant" in 1985. *See Carney,* 471 U.S. at 390–91. The fact that the officers in this case could have secured a warrant, either before towing the vehicle or before searching it at the police station, does not render the automobile exception inapplicable. *See Johns,* 469 U.S. at 484 (the justification to conduct a warrantless search does not vanish once the car has been immobilized.). Accordingly, we reject Marquardt's attempt to reintroduce an impractibility requirement to the automobile exception.

## CONCLUSION

¶ 53. We conclude there was insufficient probable cause to justify the search warrant for Marquardt's home. Therefore, we reverse that portion of the court's order and remand for a determination, consistent with *Eason,* 2001 WI 98, of whether the good faith exception to the exclusionary rule applies in this case. In light of our first conclusion, we do not address Marquardt's request for a *Franks* hearing. Finally, we conclude that the automobile exception applies to the warrantless search of Marquardt's vehicle and, therefore, affirm that portion of the court's order denying suppression of evidence from Marquardt's vehicle on warrantless search grounds.

*By the Court.*—Order affirmed in part; reversed in part, and cause remanded for further proceedings.