COURT OF APPEALS
DECISION
DATED AND FILED

July 7, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP725-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF331

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

MELANIE A. LOPER,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waupaca County: TROY NIELSEN, Judge. *Affirmed*.

Before Kloppenburg, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Melanie "Malakai" Loper[1] appeals the judgment of conviction, entered on his guilty plea, of possession of methamphetamine.  Loper argues that the circuit court erred in denying his motion to suppress evidence obtained from the search of his vehicle during a traffic stop.  Specifically, Loper argues that the arresting officer conducted a warrantless search of Loper's vehicle without probable cause.  We conclude that the officer had a reasonable belief that Loper's vehicle likely contained drug-related contraband based on the circuit court's credibility determinations and factual findings as to the totality of circumstances, namely:   Loper's nervousness during, and furtive movement shortly after, the officer's initial contact with Loper; along with the officer's observation, when she subsequently returned to Loper's vehicle and asked him to step out of his vehicle, of a syringe cap and a sandwich-type bag underneath where Loper had been sitting, items that the officer knew, through her training and experience, are associated with drugs.  Accordingly, we conclude that the officer had probable cause to search Loper's vehicle, and we affirm.

## BACKGROUND

¶2      The State charged Loper with possession of methamphetamine and operating without a license following a traffic stop in October 2019.  Loper filed a

---

[1] Loper identifies as male, and so we will refer to him as such.

motion to suppress evidence obtained during the traffic stop and search of his vehicle.[2]

¶3      The circuit court held a hearing on Loper's suppression motion. At the hearing the officer who initiated the stop and searched Loper's vehicle testified, and the officer's dash cam video was offered to, and accepted into evidence by, the circuit court. The following facts are taken from the officer's testimony at the suppression hearing and the officer's dash cam video.

¶4      In October 2019, the officer stopped a vehicle driven by Loper for a cracked tail lamp and loud muffler and, while making the stop, observed that the registration on Loper's vehicle was expired. When the officer approached the vehicle and talked to Loper through the passenger side window, Loper appeared "nervous" and was "moving around." The officer asked Loper if he had his license and if there was anything illegal in the vehicle. Loper answered no to both questions.

¶5      The officer went back to her squad car to perform a license check and ran Loper's identifying information through the state dispatch. The officer learned that Loper did not have a valid driver's license and had a warrant out of Winnebago County for contempt of court in a retail theft case. While the officer was running Loper's information, the officer observed Loper "moving around

---

[2] Loper's motion, in addition to challenging the search of the vehicle, also sought to suppress evidence derived from the officer's questioning of Loper after Loper was arrested without the officer having provided the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). At the hearing on the motion, the State agreed with Loper that the warnings were not provided and that Loper's statements made after Loper was arrested should be suppressed. Accordingly, the circuit court granted Loper's motion to suppress his post-arrest statements and did not consider those statements for the purpose of determining whether there was probable cause to search Loper's vehicle. We also do not consider those statements in our analysis.

quite a bit" in the vehicle. The officer returned to Loper's vehicle and asked him to stop moving around. The officer said to Loper, "When I tell you to sit tight it means sit tight, okay, don't be digging around." The officer did not see Loper make "other furtive movements" thereafter.

¶6 The officer returned to her squad car and obtained verification of the status of Loper's license and warrant. The officer also requested a backup officer ("the backup officer"). After the backup officer arrived on the scene, the officer returned to Loper's vehicle a third time and asked Loper to step out of the vehicle.

¶7 When Loper got out of the driver's seat, the officer observed an orange syringe cap and a crumpled sandwich-type bag on the driver's seat where Loper had been sitting. While the officer did not remember whether the bag was a clear plastic bag or a brown bag, the kind of bag that the officer saw was, in her experience, likely to contain drugs. Based on the officer's training and experience, both the syringe cap and the kind of bag that the officer saw are associated with drug use.

¶8 The officer then arrested Loper "on the warrant" and, together with the backup officer, searched the vehicle. In the course of the search, the backup officer found a loaded syringe in the driver side door which contained methamphetamine.

¶9 In its ruling, the circuit court made the following factual findings: Loper was nervous and made a furtive movement after his initial contact with the officer, which led the officer to ask Loper to stop moving; and the officer subsequently saw a syringe cap and a sandwich-type bag on the driver's seat underneath where Loper had been sitting. The court also credited the officer's testimony that the syringe cap and bag that she saw are associated with drugs. The

court determined that, considering these facts taken together, there was probable cause to search Loper's vehicle for drug-related contraband. Accordingly, the court denied Loper's motion to suppress the evidence seized from the vehicle.

¶10 Following the circuit court's denial of the motion to suppress, Loper entered a guilty plea to possession of methamphetamine and the State agreed that the charge of operating without a license would be dismissed and read-in. Loper appeals.[3]

## DISCUSSION

¶11 The sole issue on appeal is whether the officer had probable cause to conduct a warrantless search of Loper's vehicle. We conclude that the officer had a reasonable belief that drug-related contraband would likely be found in Loper's vehicle based on the circuit court's credibility determinations, factual findings, and the evidence supporting those findings, namely: Loper's nervousness during, and furtive movement shortly after, the officer's initial contact with Loper; along with the officer's observation when she subsequently returned to Loper's vehicle and asked him to step out of his vehicle, of a syringe cap and a sandwich-type bag on the seat underneath where Loper had been sitting, items that she knew, through her training and experience, are associated with drugs. Accordingly, the officer had probable cause to search the vehicle.

---

[3] The circuit court entered the judgment of conviction in May 2021. After being granted multiple extensions, Loper filed the notice of appeal in May 2022. Also after being granted multiple extensions, the parties completed their appellate briefing in February 2023.

*Applicable Standard of Review and Legal Principles*

¶12    An appellate court reviews a motion to suppress evidence under a two-step analysis. *State v. Eason*, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625. We uphold the circuit court's findings of fact unless they are clearly erroneous. *State v. Blatterman*, 2015 WI 46, ¶16, 362 Wis. 2d 138, 864 N.W.2d 26. We then independently determine whether those facts satisfy constitutional principles. *Id.*

¶13    The Fourth Amendment of the United States Constitution and article I, section 11 of the Wisconsin Constitution protect the right to be free from unreasonable searches and seizures. *State v. Young*, 2006 WI 98, ¶18, 294 Wis. 2d 1, 717 N.W.2d 729. Warrantless searches are per se unreasonable under the Fourth Amendment to the United States Constitution, but there are several exceptions. *State v. Matejka*, 2001 WI 5, ¶17, 241 Wis. 2d 52, 621 N.W.2d 891; *see also Katz v. United States*, 389 U.S. 347, 357 (1967).[4] Pertinent here, there is an "automobile exception" to the general rule requiring warrants for searches, based on the United States Supreme Court's recognition "that the unique nature of automobiles sets them apart from other areas protected from warrantless searches under the Fourth Amendment." *State v. Marquardt*, 2001 WI App 219, ¶26, 247 Wis. 2d 765, 635 N.W.2d 188. Under the automobile exception, a warrantless search of a vehicle does not offend the Fourth Amendment if: (1) there is probable cause to search the vehicle; and (2) the vehicle is readily mobile. *Id.*,

---

[4] Where, as here, the language of the state constitutional provision at issue is virtually identical with that of its federal counterpart, "'we have traditionally interpreted our constitution consistent with the protections of the federal constitution as interpreted by the United States Supreme Court.'" *State v. Marquardt*, 2001 WI App 219, ¶32, 247 Wis. 2d 765, 635 N.W.2d 188 (quoting *State v. Tompkins*, 144 Wis. 2d 116, 133, 423 N.W.2d 823 (1988)).

¶¶31-33. Loper does not dispute that the vehicle he was driving was readily mobile; therefore, the only issue on appeal is whether the officer had probable cause to search the vehicle.

¶14    As to the element of probable cause, "[p]olice may conduct a warrantless search of a car if they have probable cause to believe that the car contains contraband." *State v. Jackson*, 2013 WI App 66, ¶8, 348 Wis. 2d 103, 831 N.W.2d 426. Probable cause is "a flexible, common-sense standard. It merely requires that the facts available to the officer would warrant a [person] of reasonable caution in the belief[] that the contraband was likely to be in the place searched." *State v. Tompkins*, 144 Wis. 2d 116, 124, 423 N.W.2d 823 (1988) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (internal quotation marks omitted)). "What is required is more than a possibility, but not a probability, that the conclusion is more likely than not." *Tompkins*, 144 Wis. 2d at 125.

¶15    Probable cause also "must be viewed in light of the knowledge and experience of the person conducting the search" and "contemplates the totality of the circumstances at the time of the search." *State v. Lefler*, 2013 WI App 22, ¶8, 346 Wis. 2d 220, 827 N.W.2d 650. In looking at the facts before the officer, "[t]his court has always stressed the reasonableness factor. Is it reasonable to believe in the circumstances that particular evidence or contraband may be located at a place sought to be searched?" *Tompkins*, 144 Wis. 2d at 125.

*Analysis*

¶16    We now turn to the question of whether the totality of circumstances supported a reasonable belief that contraband would likely be found in Loper's vehicle such that the officer had probable cause to search the vehicle. As stated, the totality of circumstances before the officer, as found based on testimony

credited by the circuit court, was as follows: Loper was nervous during, and made a furtive movement shortly after, his initial contact with the officer, which led the officer to tell him to sit still; when Loper subsequently stepped out of the vehicle, there were a syringe cap and a crumpled sandwich-type bag on the driver seat immediately under where he had been sitting; and the officer knew from her training and experience that the syringe cap and that kind of bag are associated with drug use. We conclude that it was reasonable for the officer to connect the nervousness and furtive movement that she observed during, and immediately after, her initial contact with Loper with what were, based on her training and experience, drug-related items that she saw on the seat underneath where Loper had been sitting. We further conclude that it was reasonable for the officer to believe, based on that connection and given her training and experience, that drug-related contraband would likely be found in Loper's vehicle. More plainly stated, a reasonable officer in these circumstances could infer from Loper's nervousness and his "moving around" that the movement the officer saw was Loper hiding the syringe cap and bag on the seat underneath him, and to believe either that Loper moved other evidence of drug use elsewhere in the vehicle or that evidence of drug use was likely located elsewhere in the vehicle.

¶17 Loper argues that his nervousness, furtive movement, and the presence of the syringe cap and bag each, independently, exemplifies ordinary behavior or has a lawful explanation. However, that each individual fact could be ordinary or lawful on its own does not mean that, taken together, they do not amount to probable cause for a search. As we next explain, Loper's specific arguments as to each of these facts fail to show that these facts do not contribute to the totality of circumstances supporting probable cause.

¶18    As to Loper's nervousness, our supreme court has long instructed that "the court of appeals, and this court, can use [a defendant's] nervousness as a factor" in considering whether an officer had probable cause to search a vehicle. *State v. Morgan*, 197 Wis. 2d 200, 215, 539 N.W.2d 887 (1995); *see also State v. Kyles*, 2004 WI 15, ¶57, 269 Wis. 2d 1, 675 N.W.2d 449 (considering the defendant's "commonly exhibited" nervousness, based on the officer's testimony that the defendant was "a little nervous," along with the defendant's hand movements to support probable cause to search his vehicle).

¶19    Nevertheless, Loper argues that his nervousness was "ordinary" and not "atypical" for a traffic stop and, therefore, does not support the conclusion that probable cause existed to search Loper's vehicle. He cites *State v. Betow*, 226 Wis. 2d 90, 593 N.W.2d 499 (Ct. App. 1999), in which this court determined that the defendant's nervousness in that case did not support reasonable suspicion to search the defendant's vehicle because "no assertion [was] made in this case that [the defendant's] nervousness was unusual or in any way out of the ordinary." *Betow*, 226 Wis. 2d at 96. However, we see no language in *Betow* that establishes a rule that nervousness, even if characterized as "ordinary," may not contribute to a conclusion that probable cause existed; rather, this court determined only that it did not support reasonable suspicion in that case. Moreover, what differentiates Loper's nervousness during his initial contact with the officer here is its connection with the other facts, including, to repeat, his furtive movement shortly after his initial contact with the officer and the presence of the syringe cap and sandwich-type bag on the seat underneath where he had been sitting, along with the officer's knowledge, based on her training and experience, that those items are associated with illegal drug use. *Cf. id.* at 98 (ruling that there was no reasonable suspicion to search the defendant's vehicle when the defendant was stopped for

9

speeding and appeared to be nervous, and his wallet had a picture of a mushroom on it and the officer knew that several people use the mushroom symbol to show their use of narcotics).

¶20    Loper also asserts that the officer did not "describe any physical manifestations of [Loper's] nervousness." However, the circuit court credited the officer's testimony that Loper's nervousness was overt and observable. As stated above, the officer testified, "I asked [Loper] why [he] was moving around so much and noticed that [Loper] was nervous, and asked [Loper] if [he] had anything illegal in the vehicle that I needed to know about." Loper does not persuade us that a more physically detailed description of nervousness must be shown for Loper's nervousness to support probable cause to search his vehicle.[5]

¶21    As to Loper's furtive movement, our supreme court has similarly long instructed that a driver's furtive movement during a traffic stop is a valid consideration in determining whether an officer had probable cause to search the driver's vehicle. *State v. Johnson*, 2007 WI 32, ¶37, 299 Wis. 2d 675, 729 N.W.2d 182; *State v. Nimmer*, 2022 WI 47, ¶36, 402 Wis. 2d 416, 975 N.W.2d 598. There are certainly innocent explanations for a driver's furtive movement, as Loper points out, and which have been recognized by Wisconsin courts. *See Johnson*, 299 Wis. 2d 675, ¶43 (explaining that innocent explanations include when a driver "reaches to get [the person's] registration out of the glove compartment; leans over to get [the person's] wallet out of [the person's] back pocket to retrieve [the person's] driver's license; reaches for [the person's] purse

---

[5] The State asserts that Loper displayed "unusual" nervousness and that the officer testified as such, neither of which assertion is supported by the record. We remind counsel of the importance of accurately representing the record.

to find [the person's] driver's license; picks up a fast food wrapper from the floor; puts down a soda; turns off the radio"). In *Johnson*, the court analyzed whether a "head and shoulders movement," along with the traffic violations Johnson was initially stopped for, justified a reasonable suspicion that Johnson may be in possession of weapons. *Id.*, ¶40. The court concluded that the movement together with the initial traffic violations were insufficient to justify a protective search because "[w]ere we to conclude that the behavior observed by the officers here was sufficient to justify a protective search of Johnson's person and his car, law enforcement would be authorized to frisk any driver and search [the driver's] car upon a valid traffic stop whenever the driver … makes any of a number of [] innocuous movements persons make in their vehicles every day." *Id.*, ¶43. Thus, in *Johnson*, evidence of a furtive movement without other indicia of criminal behavior was insufficient to support reasonable suspicion to search the defendant's vehicle.

¶22 The circumstances underpinning the search of Loper's vehicle are readily distinguishable from the circumstances in *Johnson*. Unlike in *Johnson*, the furtive movement here was not discrete. *See Johnson*, 299 Wis. 2d 675, ¶¶3, 36 (one isolated head and shoulder movement). Rather, the officer testified that she "wasn't sure what [Loper] was doing. [Loper] was moving around quite a bit to the point where I was wondering if maybe there was a weapon in the car." In response to the question of whether "the moving around could have been a weapon, could have been also trying to conceal something from you," the officer testified "correct." Moreover, it can be reasonably inferred from the officer's telling Loper, "don't be digging around" after Loper had already provided his identifying information and vehicle information to the officer, that Loper's

movement was something other than the "innocuous movements" contemplated by the court in *Johnson*. *See id.*, ¶43.

¶23    Further, in *Johnson* the furtive movement was unconnected to any other indicia of criminal conduct. *Johnson*, 299 Wis. 2d 675, ¶43.  Here, in contrast, the furtive movement was connected in terms of timing and substance to Loper's nervousness during his initial contact with the officer and the discovery shortly after of the syringe cap and bag on the seat underneath where Loper had been sitting.

¶24    Loper argues that the furtive movement is not significant because the officer was not so concerned by Loper's movement as to take any other action than return to her squad car.  However, the officer did tell Loper to sit still, and, when she returned to her squad car she called for backup and waited for the backup officer to arrive before returning to Loper in his vehicle.  Loper fails to persuade us that the furtive movement cannot contribute to the probable cause totality of circumstances analysis.

¶25    As to the presence of the syringe cap and sandwich-type bag, the circuit court credited the officer's testimony that, based on her training and experience, a syringe cap is significant because needles are associated with drug use, and the type of bag she saw on Loper's seat is also "consistent with drug use."

¶26    Loper argues that the circuit court erred because a syringe cap and a bag are lawful items on their own and neither is included in the definition of "drug

paraphernalia" under WIS. STAT. § 961.571(1)(b).[6]  However, an officer is not required to default to the most innocent explanation.  *See State v. Nieves*, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125 ("[A]n officer is not required to draw a reasonable inference that favors innocence when there also is a reasonable inference that favors probable cause."); *see also State v. Anderson*, 155 Wis. 2d 77, 84, 454 N.W.2d 763 (1990) ("Although many innocent explanations could be hypothesized … a reasonable police officer who is charged with enforcing the law as well as maintaining peace and order cannot ignore the inference that criminal activity may well be afoot.").

¶27    It was not unreasonable for the officer in this case to determine that, based on her training and experience, these items are associated with drug-related activity and there was, therefore, a likelihood that contraband was in Loper's vehicle, especially in light of Loper's nervousness and furtive movement.  We deem persuasive the following response to the same argument that syringes are excluded from the statutory definition of drug paraphernalia which this court offered in *State v. Manlick*, Nos. 2014AP2138-CR and 2014AP2626-CR, unpublished slip op. ¶¶10-11 (WI App Apr. 1, 2015) (internal citations omitted):[7]  "The law, however, does not require that police actually observe criminal activity in a vehicle before they may search that vehicle and its contents for evidence.  A

---

[6] WISCONSIN STAT. § 961.571(1)(b)1. (2021-22) states that "Drug paraphernalia" excludes:  "1. Hypodermic syringes, needles and other objects used or intended for use in parenterally injecting substances into the human body."

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[7] *See* WIS. STAT. RULE 809.23(3)(b) (an unpublished opinion authored by a single judge and issued after July 1, 2009, may be cited for its persuasive value).

13

warrantless search of a vehicle may be conducted upon probable cause to believe that the vehicle contains evidence of a crime.  Probable cause deals with probabilities, not certitude[.]"  Thus, Loper's argument that the syringe cap and bag are lawful items fails to persuade us that the syringe cap and bag here cannot contribute to the probable cause totality of circumstances analysis.

¶28     Loper also points to *United States v. Wanless* to argue that the Ninth Circuit was persuaded that there was not probable cause to search a vehicle where an officer discovered a syringe cap and drug bindle in a passenger's pocket, along with track marks on his arm, and the passenger stated that he had last "shot up" two days prior.  *United States v. Wanless*, 882 F.2d 1459, 1461 (9th Cir. 1989).  The court in *Wanless* concluded that, while the above facts could lead to a suspicion that Wanless used drugs, that information did not indicate that there was presently contraband in the vehicle in which the defendant was a passenger.  *Id.* at 1465.  However, the facts in that case are easily distinguishable.  In *Wanless*, the officer did not observe the additional facts, present here, of the driver's (Loper's) nervousness and furtive movement that were connected with the subsequent presence of the syringe cap and bag on the seat underneath where the driver (Loper) had been sitting.  *See Wanless*, 882 F.2d at 1466.  Accordingly, Loper fails to show that *Wanless* is persuasive authority here.

¶29     Loper also argues that the officer's testimony regarding the bag pointed to no particular facts that were indicative of drug use.  However, the circuit court found that, based on the officer's testimony credited by the court, the bag was a sandwich-type bag, and Loper does not argue that that description is clearly erroneous.  In addition, the officer specifically testified that the kind of bag she observed on the seat underneath where Loper had been sitting is, based on her training and experience, associated with drug use, and the circuit court specifically

credited that testimony. Also, the officer could reasonably infer that Loper had placed the bag on the seat underneath him in order to try to hide it from the officer's view. When an officer applies the officer's knowledge, training, or experience to a set of particular facts, that application may give rise to probable cause. *State v. Meyer*, 216 Wis. 2d 729, 576 N.W.2d 260 (1998). Loper does not persuade us that the officer was required to be more descriptive.

¶30 Loper also faults the officer for not asking Loper why he kept a syringe cap in his car and why he was moving around. However, the officer is neither required to solicit from a person subject to a search an explanation of the reason for the person's possessions or behavior, nor to believe the proffered answer. *See State v. McGill*, 2000 WI 38, ¶37, 234 Wis. 2d 560, 690 N.W.2d 795 (approving the officer's seizure of an object in the defendant's pocket despite the defendant's saying the object was "just change" when it was clear to the officer that the object was not change). Moreover, as explained above, the officer is not required to accept innocent inferences where inferences supporting probable cause exist. *See Nieves*, 304 Wis. 2d 182, ¶14.

¶31 In sum, each of the facts here—Loper's nervousness during, and his furtive movement shortly after, his initial contact with the officer; and the presence of the syringe cap and the sandwich-type bag on the seat underneath where Loper had been sitting, items that are, based on the officer's training and experience, associated with drug use—contributes to the totality of circumstances supporting probable cause. We conclude that the officer had a reasonable belief, based on these facts taken in their totality, that Loper's vehicle likely contained drug-related contraband and, therefore, that she had probable cause to search Loper's vehicle.

**CONCLUSION**

¶32    For the reasons stated, we conclude that the circuit court did not err in denying Loper's motion to suppress evidence obtained from the search of Loper's vehicle.  Accordingly, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.