COURT OF APPEALS
DECISION
DATED AND FILED

January 20, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2022AP350-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CF364

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

 V.

LORI ANN PHILLIPS,

   DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for La Crosse County: ELLIOTT M. LEVINE, Judge. *Reversed and cause remanded for further proceedings*.

Before Blanchard, P.J., Kloppenburg, and Nashold, JJ.

¶1     PER CURIAM. After the body of the deceased Mark Phillips was found next to a snowbank outside his house, police seized a pickup truck

registered to his wife, Lori Phillips, which was parked at their shared residence.[1] Police seized the pickup without obtaining permission from Phillips or a court order authorizing seizure. Police then held the pickup at a police impound lot before obtaining a search warrant authorizing its search. The search yielded evidence that the State now seeks to rely on at a trial against Phillips on a charge of hit and run resulting in the death of Mark Phillips.

¶2 The circuit court granted the motion to suppress the evidence from the search of the pickup, based on the circumstances of its seizure. Specifically, the court concluded that the State failed to show that the automobile exception to the warrant requirement of the Fourth Amendment applies to permit the warrantless seizure. The court also took the position that suppression is appropriate because police held the pickup in the impound lot for an unreasonable period of time before obtaining the search warrant and that this was contrary to the reasoning in *United States v. Jones*, 565 U.S. 400 (2012). The State appeals the suppression order.

¶3 Following the reasoning in *State v. Marquardt*, 2001 WI App 219, ¶¶26-52, 247 Wis. 2d 765, 635 N.W.2d 188, we conclude that the automobile exception to the warrant requirement applies to the seizure of the pickup. Separately, we reject search-warrant delay as a basis to affirm the circuit court for multiple reasons, including lack of development by Phillips. Accordingly, we reverse the circuit court's suppression order and remand for further proceedings.

---

[1] We generally refer to Lori Phillips as "Phillips" and to her deceased husband as "Mark Phillips."

## BACKGROUND

¶4    Now pending against Phillips is a criminal charge that she violated WIS. STAT. §§ 346.67(1) ("Duty upon striking person or attended or occupied vehicle.") and 346.74(5)(d) (2019-20) (violation of § 346.67(1) is a "Class D felony if the accident involved death to a person") in connection with an accident that resulted in the death of Mark Phillips.[2]  The alleged accident occurred near the

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

WISCONSIN STAT. § 346.67 provides:

(1) The operator of a vehicle involved in an accident shall reasonably investigate what was struck and if the operator knows or has reason to know that the accident resulted in injury or death of a person or in damage to a vehicle that is driven or attended by a person, the operator shall stop the vehicle he or she is operating as close to the scene of the accident as possible and remain at the scene of the accident until the operator has done all of the following:

(a) The operator shall give his or her name, address and the registration number of the vehicle he or she is driving to the person struck or to the operator or occupant of or person attending any vehicle collided with; and

(b) The operator shall, upon request and if available, exhibit his or her operator's license to the person struck or to the operator or occupant of or person attending any vehicle collided with; and

(c) The operator shall render reasonable assistance to any person injured in the accident, including transporting, or making arrangements to transport the person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that medical or surgical treatment is necessary or if requested by the injured person.

(2) Any stop required under sub. (1) shall be made without obstructing traffic more than is necessary.

(continued)

family residence in the Town of Onalaska and involved Phillips operating a 2019 Dodge Ram pickup truck that was registered to her.

¶5 The following brief factual overview is undisputed for purposes of this appeal, with additional facts provided in the Discussion section below. Police responded to the family residence early on the morning of February 23, 2019. There they found Phillips standing outside in the driveway area and the body of the deceased Mark Phillips, face down, next to a snow bank adjoining the driveway. About 15 feet away from the body, lying on the driveway, was a pair of wraparound sunglasses. Nearby was parked a 2019 Dodge Ram, which is a full-sized pickup, registered to Phillips. Phillips told police, in part, that the two had argued the night before and that at one point, with Mark Phillips standing nearby and while the passenger door of the pickup was open, Phillips drove the pickup away in a hurry. She further told police that in the morning she discovered his body by the snowbank and called 911.

¶6 During the course of the initial investigation on February 23, while Phillips was being interviewed at a police station but without having been placed under arrest, police had the pickup hauled away from the residence on a flatbed truck and taken to a police impound lot. Phillips did not consent to this seizure and there was no warrant or other court order authorizing the seizure. On March 15, while the pickup was still in police custody, a circuit court judge issued a search warrant authorizing its search.

---

(3) A prosecutor is not required to allege or prove that an operator knew that he or she collided with a person or a vehicle driven or attended by a person in a prosecution under this section.

4

¶7     Shortly after the search warrant was issued, investigators with the Wisconsin Crime Laboratory conducted a forensic examination of the pickup. According to the criminal complaint, the search yielded "apparent hair" that was located near the pickup's front right passenger tire, front passenger suspension bar, and driver's step, and also yielded fibers in various locations that were "consistent with" the pants Mark Phillips was wearing when his body was discovered.

¶8     Phillips moved for an order suppressing "all evidence recovered from the truck after it was seized." The motion acknowledged the automobile exception to the Fourth Amendment. *See California v. Carney*, 471 U.S. 386, 390-92 (1985) (under automobile exception to the warrant requirement, first recognized in *Carroll v. United States*, 267 U.S. 132, 153 (1925), police may seize a readily mobile vehicle and search it for contraband or evidence of a crime, without a warrant, consent, or other exception to the Fourth Amendment, when there is probable cause to believe that it contains contraband or evidence of a crime). However, Phillips argued that the automobile exception does not apply here because, at the time of the seizure: (1) there was not probable cause to believe that the pickup contained evidence of a crime; and (2) the pickup was not "readily mobile," because, she argued, "[n]obody was going to drive the truck from the home" and police "had ample time to pursue a warrant to seize and tow the truck."

¶9     The prosecutor argued in response that both of the required elements of the automobile exception are satisfied and that in order to rely on the automobile exception the State does not need to show that it would have been impractical for police to obtain a court order authorizing seizure of the pickup before doing so. *See Marquardt*, 247 Wis. 2d 765, ¶¶27-31.

5

¶10    In the alternative, the prosecutor contended that, even if the automobile exception does not apply, evidence obtained during the search of the pickup is admissible under the reasoning in *State v. Gaines*, 197 Wis. 2d 102, 539 N.W.2d 723 (Ct. App. 1995).  In *Gaines*, this court applied the rule that an unlawful seizure does not necessarily invalidate the later recovery of evidence authorized by a search warrant if the connection between the unlawful seizure and the later recovery is attenuated and dissipates the taint.  *See id.* at 113.  Phillips responded to this argument by distinguishing the facts in *Gaines* and also argued that "it is unlikely that *Gaines* remains good law following the U.S. Supreme Court decision in *U.S. v. Jones*, 565 U.S. 400 (2012)."

¶11    The circuit court conducted an evidentiary hearing over the course of two days in February and March 2021.  At a separate hearing in May 2021, the court made the following two rulings, memorialized in a June 2021 written order, resolving the automobile exception aspect of the suppression issue:  (1) the State showed that the police had probable cause at the time of the seizure to believe "that the truck was involved with the death"; but (2) the State did not show that the pickup was then "readily mobile."  Based on its not-readily-mobile determination, the court concluded that the automobile exception does not apply to justify the warrantless seizure of the pickup.

¶12    Separately, the circuit court allowed the parties to submit further briefing before resolving the suppression issue.  The additional briefing was to address the prosecutor's alternative argument that, even if the automobile exception does not apply, evidence obtained during the search of the pickup is admissible under *Gaines*.

¶13    In addition, in its oral ruling (although not in its corresponding written order), the circuit court supported its suppression decision by making references to the *Jones* opinion, which we address in the Discussion section below.

¶14    At a hearing in January 2022, the circuit court rejected the prosecutor's alternative argument based on *Gaines* and, consistent with this ruling, issued a final written order on the suppression motion, directing "that the vehicle and all evidence from the vehicle are suppressed." At this hearing, the court again referenced the *Jones* opinion (but, as before, the court did not reference *Jones* in its corresponding written order).

¶15    The State now pursues a pretrial appeal, seeking reversal of the suppression ruling. *See* WIS. STAT. § 974.05(1)(d)2. ("appeal may be taken by the state from any" order, "the substantive effect of which results in" the suppression of evidence).

## DISCUSSION

¶16    We first address the automobile exception and explain why we conclude that it applies here, which makes it unnecessary for us to address the State's alternative theory under *Gaines*.[3]    Then we explain why we reject the

---

[3] Accordingly, we do not address the arguments of the parties on appeal addressing *State v. Gaines*, 197 Wis. 2d 102, 539 N.W.2d 723 (Ct. App. 1995), and *Segura v. United States*, 468 U.S. 796 (1984).

argument that Phillips now purports to raise on appeal based on the length of time police retained the pickup before obtaining the search warrant.[4]

¶17 "This court analyzes the grant or denial of a suppression motion under a two-part standard of review: we uphold the circuit court's findings of fact unless they are clearly erroneous, and we independently review whether those facts warrant suppression." *State v. Adell*, 2021 WI App 72, ¶14, 399 Wis. 2d 399, 966 N.W.2d 115.

## I. AUTOMOBILE EXCEPTION

¶18 The Fourth and Fourteenth Amendments to the United States Constitution and article I, section 11, of the Wisconsin Constitution guarantee Wisconsin citizens freedom from "unreasonable searches and seizures." *State v. Griffith*, 2000 WI 72, ¶25, 236 Wis. 2d 48, 613 N.W.2d 72. "Warrantless searches of homes are 'presumptively unreasonable,' but warrantless searches of vehicles are not." *Marquardt*, 247 Wis. 2d 765, ¶26 (quoted source omitted).

¶19 The interpretation of the Fourth Amendment by the U.S. Supreme Court that produced the automobile exception to the warrant requirement first appeared in *Carroll*, but there has been extensive U.S. Supreme Court discussion of the doctrine since *Carroll*. *See Marquardt*, 247 Wis. 2d 765, ¶¶27-31

---

[4] We reject Phillips's brief suggestion that the State cannot challenge the circuit court's June 2021 order memorializing the court's conclusion that the automobile exception does not apply because the State did not directly appeal the June 2021 order and instead appealed the March 2022 order, which was the first order to substantively result in the suppression of evidence. As the State points out, and as our summary above reflects, the court left open resolution of an alternative theory against suppression argued by the State and the court did not resolve all aspects of the suppression issue by order until March 2022, after which the State timely filed a proper notice of appeal.

(referencing precedent that includes *Carney*, 471 U.S. 386); *State v. Brereton*, 2013 WI 17, ¶26, 345 Wis. 2d 563, 826 N.W.2d 369 (deeming *Chambers v. Maroney*, 399 U.S. 42 (1970), to be "a hallmark case involving the automobile exception"); *see also* 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 7.2(b) (6th ed. 2022) (referring to the "*Carroll-Chambers-Carney* automobile exception"). Article I, section 11, of the Wisconsin Constitution uses virtually identical language as the Fourth Amendment of the United States Constitution and the automobile exception is to be applied by Wisconsin courts consistently with the teachings of the U.S. Supreme Court. *See State v. Tompkins*, 144 Wis. 2d 116, 135, 423 N.W.2d 823 (1988).

¶20 The automobile exception applies when the following two criteria are met: "(1) there is probable cause to search the vehicle; and (2) the vehicle is readily mobile." *Marquardt*, 247 Wis. 2d 765, ¶31 (citing *Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (per curiam)). As we explained in *Marquardt*, relying on U.S. Supreme Court precedent, there is no longer a requirement in this context that it was impractical for police to obtain a search warrant, with the reasoning being that "the exigency inherent in the 'ready mobility' of a vehicle, coupled with the 'lesser expectation of privacy' in a readily mobile vehicle, excuses the need to secure a search warrant." *Marquardt*, 247 Wis. 2d 765, ¶¶28-29 (citing *Carney*, 471 U.S. at 390-91; *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam)). Thus, "[i]ssues concerning whether the police could have obtained a warrant prior to searching are not relevant to the analysis." *Marquardt*, 247 Wis. 2d 765, ¶31 (citing *Dyson*, 527 U.S. at 467, and LAFAVE, § 7.2(b) (3d ed. 1996)). This court in *Marquardt* cited LAFAVE for the proposition that, so long as the elements of probable cause and a readily mobile vehicle are met, "courts uphold warrantless searches with virtually no inquiry into the facts of the

particular case, reasoning that whether any kind of exigent circumstances claim could plausibly be put forward is totally irrelevant." *Marquardt*, 247 Wis. 2d 765, ¶31.

¶21    We now address the two elements of the automobile exception summarized above, providing additional legal standards, the arguments of the parties, and our conclusions.

## A.  Probable Cause

¶22    The State argues that the circuit court correctly determined that, at the time of the seizure of the pickup, police had probable cause to believe that it constituted or contained evidence based on reasonable inferences arising from evidence available to police.  Phillips argues that the evidence established only that "Mr. Phillips was dead from an unknown cause, with absolutely no evidence to indicate the truck actually struck him."  We agree with the State.

¶23    Our supreme court has explained that the probable cause standard in this context requires the State to show "that there was a 'fair probability' that" the vehicle "contained or was itself evidence of a crime." *Brereton*, 345 Wis. 2d 563, ¶25 (quoted source omitted).

¶24    The circuit court here made the following relevant findings of fact, which Phillips does not contend were clearly erroneous:

- When Phillips was interviewed by police responding to her 911 call, she said the following:  That she had been in an argument with her husband the night before, that during the argument he had walked near the pickup, that Phillips then drove the pickup away in a rush, with the passenger door of the pickup open.  Thus, according to this account, Phillips was driving the pickup in a rushed, unusual manner next to Mark Phillips the last time he was seen alive.

- A pair of sunglasses was found 15 feet from the body, as the circuit court put it, "suspiciously in the middle of the driveway."

- The body was face down in the snow.

- The pants Mark Phillips wore at the time of his death had been, as the circuit court put it, "torn in an odd way," with "some kind of hole," and this was "not a simple tear."[5]

We conclude that from this evidence there was a fair probability that the pickup was or contained evidence of a crime because Phillips drove the pickup into her husband, knocking him to the ground by the snowbank (while knocking off his sunglasses) and resulting in his death, and that her conduct surrounding the collision and its aftermath violated WIS. STAT. § 346.67(1). That would not have been the only explanation that a reasonable officer might have considered. But the State carries its burden of showing that there was a fair probability of that scenario, reasonably calling for a forensic analysis of the pickup for evidence that it ran over or otherwise collided with Mark Phillips.

¶25 We note that, as reflected in the language of WIS. STAT. § 346.67(1), quoted *supra* in note 2, a probable cause finding related to the potential offense of hit and run resulting in death would not necessarily depend on evidence relevant to the particular state of mind of Phillips at the time of the possible collision, such as whether she acted intentionally, recklessly, or negligently in allegedly driving the pickup into or over Mark Phillips.

---

[5] We have inspected the exhibit reflecting a photograph of the damaged area of the pants while still on Mark Phillips's body. Consistent with the findings of the circuit court, the photo reflects significant tears or holes to one hip area—with some pieces of fabric entirely missing—in what suggests some sort of gouging action. The damage does not appear to be in the nature of routine wear-and-tear for pants, such as the tears that can eventually appear in the knee areas.

¶26 Phillips points out that she denied to investigators that she struck her husband with the pickup. She also emphasizes that investigators on the scene testified that they did not observe any of the following: damage to or blood on the pickup; paint transfer from the pickup to Mark Phillips; or tire treads on his body. No doubt these types of evidence would have added to the level of suspicion. But, given the facts summarized above that point toward the likelihood of a collision between the pickup and Mark Phillips, Phillips fails to explain how the absence of any or all of these types of evidence undermines that likelihood.

¶27 Further, Phillips fails to come to grips with the totality of the facts summarized above. One example involves the evidence regarding the pants. In her appellate briefing, Phillips refers to "a tear in Mr. Phillips['s] pants that occurred at an unknown time through unknown methods" and argues that such "a tear" could not represent a "physical connection between the truck and the decedent." There are multiple problems with these references. First, as explained above, there was not just "a tear" in the pants, but multiple points of damage that resemble gouges in a location and of a nature that did not appear to be the products of normal wear-and-tear. Second, the time was not "unknown," in the sense that a reasonable officer could suspect that the time was the moment of contact with the pickup when, according to Phillips, she drove in a rush from the residence, regardless of when that precisely fell on the clock. Third, the method was not "unknown," in the sense that a reasonable officer could suspect that the method was physical contact with some part or parts of the pickup, regardless of precisely which part might have caused damage to the pants. Compared with an unprotected or sheltered human being, a new, full-sized Dodge Ram is a massive, overpowering machine. Fourth, Phillips fails to explain why the pants evidence

could not represent, in her words, a potential "physical connection between the truck and the decedent."

¶28   Separately, Phillips argues that the State fails to show the probable cause element because the State at the evidentiary hearing "was unable to identify who actually seized the truck, and on what basis." Phillips does not dispute that police seized the pickup in the hours after the initial 911 call. She further acknowledges that two different police witnesses who were on the scene explained the reasons for the seizure. In addition, Phillips acknowledges the general rule that the State can in some circumstances rely on the collective knowledge of police officers in taking actions in the Fourth Amendment context. *See State v. Pickens*, 2010 WI App 5, ¶11 n.1, 323 Wis. 2d 226, 779 N.W.2d 1 (knowledge of one police officer may be imputed to another officer for the purpose of determining reasonable suspicion for a detention). The argument appears to be based on the following narrow proposition: the State cannot show probable cause for the seizure of a vehicle under the automobile exception unless it produces a witness who can testify that the witness personally directed the seizure and why the witness gave that direction. Phillips cites no authority for this proposition and we have no reason to think that it is the law.

## B. Readily Mobile Vehicle

¶29   The State argues that the circuit court erred in determining that the State fails to satisfy the second element of the test because the pickup was not readily mobile when it was seized. The State contends that this issue is controlled by *Marquardt*. *See Marquardt*, 247 Wis. 2d 765, ¶¶40-42 (rejecting an argument that the arrest of the owner of the vehicle at issue rendered it no longer readily mobile for purposes of its seizure under the automobile exception). Phillips

acknowledges that the pickup here was, in her words, "operational" when police seized it, presumably meaning that it was capable of being driven away from the residence on the roadways. But she argues that *Marquardt* is distinguishable from the facts here because the presence of emergency responders, combined with high snowbanks along the sides of the driveway, made it "practically impossible for anyone to have removed the Dodge Ram or its contents from the Phillips home." We agree with the State, based on the reasoning in *Marquardt*, which we now explain further.

¶30 Marquardt was arrested soon after pulling into the driveway of his residence in a vehicle that this court noted was "in working order." *Id.*, ¶¶5, 40. At the time of Marquardt's arrest, his "locked vehicle was parked in his driveway." *Id.*, ¶5. Shortly thereafter, police seized the vehicle and took it to a police facility, without consent from Marquardt or a warrant to do so. *See id.*, ¶¶5, 25-26, 40. Marquardt challenged this seizure on the ground that, as the court put it, "once [Marquardt] was arrested, the vehicle was no longer readily mobile." *Id.*, ¶40.

¶31 Because Marquardt had not raised the readily mobile issue in the circuit court and failed to cite legal authority, this court "decline[d] to address this argument in detail." *Id.*, ¶41. However, this court stated that it was "assure[d]" "that the argument lacks merit." *Id.* It then stated the following to show lack of merit:

> In *United States v. Gallman*, 907 F.2d 639, 641 (7th Cir. 1990),[6] the court addressed the same argument

---

[6] *United States v. Gallman*, 907 F.2d 639, 641 (7th Cir. 1990), was abrogated on other grounds by *Custis v. United States*, 511 U.S. 485 (1994).

14

from a defendant who contended that his car was not readily mobile because he had been arrested and the officers had his car key. The court rejected Gallman's reasoning, concluding: "These circumstances do indeed make the car less accessible to Gallman, but they do not make it less mobile." *Id.* This reasoning is equally persuasive here; Marquardt's arrest would not prevent other unknown individuals from moving the vehicle.

Additionally, we are not concerned by the fact that the car was seized and impounded before it was searched. The Supreme Court has held that the justification to conduct a warrantless search does not vanish once the car has been immobilized. *See United States v. Johns*, 469 U.S. 478, 484 … (1985). In short, we are confident that the readily mobile component of the automobile exception has been satisfied.

*Marquardt*, 247 Wis. 2d 765, ¶¶42-43.

¶32 In adopting the stated reasoning in *Gallman* based on the fact that the seized vehicle in *Marquardt* was "in working order," even after it had been immobilized by law enforcement officers, this court established that the readily mobile test as applied in Wisconsin requires the State to show only inherent mobility of the seized vehicle. Under this legal standard, the State is not required to produce evidence regarding the potential for any person to access the vehicle and move it. This standard is consistent with that taken not only by the Seventh Circuit, as stated in *Gallman*, but also by other federal courts of appeals and state supreme courts that have addressed the readily mobile issue. *See, e.g.*, *United States v. Howard*, 489 F.3d 484, 493 (2d Cir. 2007) ("readily mobile" "has more to do with the inherent mobility of the vehicle than with the potential for the vehicle to be moved from the jurisdiction, thereby precluding a search," without regard to "the actual ability of a driver or passenger to flee immediately in the car, or the likelihood of hi[s] or her doing so."); *Myers v. State*, 839 N.E.2d 1146, 1152 (Ind. 2005) ("[W]e understand the 'ready mobility' requirement of the

15

automobile exception to mean that all operational, or potentially operational, motor vehicles are inherently mobile, and thus a vehicle that is temporarily in police control or otherwise confined is generally considered to be readily mobile and subject to the automobile exception to the warrant requirement if probable cause is present."). Under this standard, it does not matter that Marquardt was in custody at the time of the seizure while Phillips was not, nor do any other circumstances regarding her whereabouts matter. All such circumstances are irrelevant to the analysis.

¶33 Phillips argues that *Marquardt* is distinguishable because police here were "entirely unconcerned with the disappearance of evidence" when the pickup was seized because "[e]mergency responder vehicles were parked in both routes of egress [from her driveway] to the point that the truck could not have left the home unless the vehicles were moved" and an officer "posted outside … would have denied access to anyone attempting to enter or move the Dodge Ram." But Phillips fails to provide support for the argument that application here of the rule explained in *Marquardt* turns on whether any person could have driven the pickup away while emergency responders were still on the scene.

¶34 Phillips may intend to suggest that a related potential distinguishing feature of the facts here compared with those in *Marquardt* is that here there is no evidence that, as Phillips puts it, "an ally of the defendant" was poised to spirit the pickup away or destroy or remove evidence from it. But the discussion in *Marquardt* about "unknown individuals" "moving the vehicle" makes clear that no such evidence is needed for the exception to apply. *See Marquardt*, 247 Wis. 2d 765, ¶42. As reflected above in our summary of the automobile exception as stated in *Marquardt*, no showing of exigency (such as the hypothetical "ally of the defendant" that Phillips posits, someone prepared to hide or destroy evidence)

is required, given "the 'ready mobility' of a vehicle, coupled with the 'lesser expectation of privacy' in a readily mobile vehicle." *See id.*, ¶¶28-29. Indeed, as explained in *Marquardt*, the automobile exception applies even when a vehicle has been "impounded" or "immobilized." *See id.*, ¶43. As we have explained, what matters here, under the reasoning in *Marquardt*, is that the pickup was "in working order," capable of being driven.

¶35 Phillips argues that applying the automobile exception doctrine to permit this seizure—despite the presence of emergency vehicles and police personnel at the scene on a driveway surrounded by snow—"would allow the search of any functioning vehicle" even if the vehicle is "unable to travel from the scene." This would allow the warrantless seizure, she argues, of a vehicle on "an auto ferry, on a mechanic's lift, within a secured police impound lot, or even fitted with an immobilizing boot." It is not clear what assumptions Phillips makes about the hypothetical warrantless search of vehicle while it is, for example, temporarily on a ferry boat. In any case, Phillips fails to show how any of these hypotheticals helps to distinguish the particular facts here from the relevant facts in *Marquardt*.

## II. DELAY IN OBTAINING THE SEARCH WARRANT

¶36 Phillips asserts that, assuming that the seizure of the pickup was lawful at its inception, "delay between the warrantless seizure and subsequent search unreasonably infringed on Ms. Phillips'[s] possessory interest in the truck." This argument is made in response to the State's argument that the circuit court erred in concluding that, under *Jones*, the detention of her truck provided another basis to suppress evidence. However, in seeking affirmance of this ground for suppression, Phillips does not cite Wisconsin precedent, does not purport to rely on *Jones* as the circuit court did, and does not cite to case law from any

17

jurisdiction involving the automobile exception. Instead, she asserts that, under the reasoning in opinions of federal circuit courts of appeals addressing factual circumstances different from those here, retention of the pickup for this time period before obtaining a warrant was constitutionally unreasonable due to her strong possessory interest in the pickup and the fact that "the State has offered no reasonable explanation for why it kept the Dodge Ram secured without [obtaining] a warrant for twenty days."

¶37 As explained more fully below, we conclude that the following problems are fatal to this argument. First, the substantive argument that Phillips raises for the first time on appeal is undeveloped. Second, after the State on appeal offers a developed argument that the circuit court erred on this issue, Phillips fails to offer an argument that supports the court's reasoning. Third, Phillips failed to present her new argument to the circuit court as a basis for suppression. Fourth, in sustaining objections to testimony made by Phillips at the evidentiary hearing, the circuit court prevented the development of a factual record that could have allowed the parties and the court to properly address the issue of whether there was an unreasonable delay between the initially valid seizure of the truck and the seeking of a warrant to search it.

¶38 The following is additional background. As referenced above, in her briefing to the circuit court Phillips referred to *Jones* in the course of challenging the State's alternative argument against suppression based on *Gaines*. Phillips argued that *Gaines* is "unlikely" to be good law because *Jones* "held that the Fourth Amendment applies not only to places and property [involving a] privacy interest, but also to the physical trespass to chattels by government agents." Phillips noted that the Court in *Jones* held that the warrantless installation of a Global Positioning System (GPS) device on a defendant's vehicle and its use to

18

track the vehicle's movements was a search that violated the Fourth Amendment because, in the words of the Court, "[t]he Government physically occupied private property for the purpose of obtaining information." *See Jones*, 565 U.S. at 402, 404. Phillips also observed that, in reaching that result, the Court emphasized the significance of property rights, such as common-law trespass, within the meaning of the Fourth Amendment when it was adopted. *See id.* at 405. Phillips argued that seizure of the pickup here was a "far more substantial" "trespass to Ms. Phillips'[s] property" than was the installation of the GPS device to the defendant in *Jones*. As in *Jones*, Phillips argued, "the sole reason for this trespass was to eventually gather information to use against Ms. Phillips."

¶39 Summarizing, Phillips argued in the circuit court with regard to *Jones* only that the State could not rely on *Gaines* as an alternative to the automobile exception, because the reasoning in *Gaines* is contrary to the reasoning in *Jones*. Phillips did not argue that the passage of 20 days between the warrantless seizure and police obtaining the warrant authorizing the search was unreasonable under the Fourth Amendment. It is true that, in the course of arguing the *Gaines* issue, Phillips used the phrase "without any legal authorization for twenty days," but this passing reference to the lack of "legal authorization" appeared to involve the basis for the motion to suppress: there was no "legal authorization," including no automobile exception, permitting seizure of the pickup. And in any case, this reference could not reasonably be considered a sufficiently prominent statement that Phillips was not exclusively challenging the seizure itself, but instead basing the suppression motion in part on the State's conduct in allowing an allegedly unreasonable period of time to pass between seizure and seeking the search warrant. *See also State v. Radder*, 2018 WI App 36, ¶16, 382 Wis. 2d 749, 915 N.W.2d 180 ("The fact that the State would bear the

burden of proof at a hearing does not mean [the defendant] simply gets to raise questions and put the State to its proof.... [T]he State is entitled to notice of the factual disputes supporting a purported constitutional violation.").

¶40     This also strongly appears to have been the circuit court's view of the scope and nature of the only suppression argument advanced by Phillips, based on the following rulings that the court made at the evidentiary hearing. When the prosecutor asked a police investigator if he was aware of a reason that Phillips did not simply drive the pickup from the family residence to the police station for a voluntary interview, instead of riding with a friend as she did, defense counsel objected on the grounds of speculation. The objection was sustained. The prosecutor then asked the witness whether Phillips ever contacted police after the pickup was seized to ask for its return. The defense again objected, this time on relevance grounds, and this objection was also sustained.[7] The following dialog then occurred:

> [PROSECUTOR]:  We talked about it being seized for 20 days prior to a search warrant, I just want it on the record that there was no urgency to it.
>
> THE COURT:  Okay. I—I actually believe it's irrelevant because it's—I know it's irrelevant because it doesn't matter, once the thing is seized, it's seized. The question is does the State have a right to seize it?

¶41     At the May 2021 hearing on the circuit court's initial set of rulings, immediately after the court ruled that the automobile exception does not apply, the

---

[7] For context we note that Phillips concedes on appeal that she "did not immediately demand the return of the truck," implying that there was no demand during the 20-day period at issue.

court said it would take up, apparently as a separate issue, whether there is "a trespass on the property here" under *Jones*. The court said:

> The *Jones* case is very important because it really— the trespass in that case by the government was the imposition of a GPS unit on the bottom of a car. That's all it was. And the Supreme Court said that that was a seizure in and of itself, and because of that … interference of trespass, essentially what they say is, is that the physical trespass of the vehicle is … unreasonable in that case. The physical trespass of the GPS was unreasonable, even though it was a minor occupation in the *U.S. v. Jones* case.
>
> Physical trespass in this case is far greater. It's 20 days of holding it within the county holding facility. [Mapp] versus Ohio[8] says unlawful seizures are to be suppressed. Wong Sun versus U.S.[9] says … unlawful seizures … are to be suppressed.

¶42 In a motion to reconsider filed after the May 2021 hearing but before the January 2022 hearing on the circuit court's final set of rulings, the State renewed its position that *Jones* does not overrule *Gaines*, and contended that *Jones* addresses an entirely different context than the one here or in *Gaines*.

¶43 At the January 2022 hearing the circuit court said the following, immediately after rejecting the State's alternative argument based on *Gaines*:

> The other issue is the possessory interest. I think *Jones* is very clear, if it doesn't overrule *Gaines*, it actually adds another level to *Gaines*, which is the question of possessory interest.
>
> Possessory interest is, in *Gaines*, is very slight, in the sense that it's only a matter of hours. And in *Jones* is even, someone could argue it's more insignificant, because it was a little piece of metal that's attached to a car. It was

---

[8] *Mapp v. Ohio*, 367 U.S. 643 (1961).

[9] *Wong Sun v. United States*, 371 U.S. 471 (1963).

21

a GPS unit. They never took the vehicle. They never held it in *Jones*. They never did anything to the vehicle. The person had total use of the vehicle during that time. In fact, they wanted him to use it for that fact.

But, the reality is, is that there was no invasion of the possessory interest. You take a vehicle, put it in a garage and hold it for 22 days,[10] that's fairly clear the invasion of their possessory interest. That's protected in, you know, separately from the privacy right that you have to have that vehicle.

¶44    On appeal, the State argues in part as follows:

The [circuit] court's reliance on *Jones*, and its conclusion that *Jones* "adds another level to *Gaines*, which is the question of possessory interest" is puzzling because, as the court seemed to recognize, *Jones* has nothing to do with a person's possessory interest in a vehicle. It concerns only a person's privacy interest. In *Jones*, the Supreme Court did not address the person's possessory interest in the vehicle because the police did not interfere with that interest. *Jones* was a tracking case, not a seizure case. *Jones* simply has nothing to do with the issue Phillips raised in this case, which concerns whether seizure of her truck violated her possessory interests in the truck.

(Citation omitted.)

¶45    In her response brief on appeal, Phillips relies on *Jones* only for the purpose of an argument that we do not need to reach: that *Gaines* cannot be reconciled with *Jones*, which is the same approach she took in the circuit court. In the section of her brief that attempts to support the circuit court's ruling that the delay between the warrantless seizure and the warrant-supported search violated the Fourth Amendment, which the court purported to base on *Jones*, Phillips relies

---

[10] The parties agree that the police held the pickup truck after its warrantless seizure for 20 days, not 22 days, before obtaining a warrant to search it and conducting the search.

on other authority and not on *Jones*. In other words, Phillips on appeal does not attempt to explain or support the rationale expressed by the circuit court.

¶46 With that additional background, we reject the new argument raised for the first time on appeal because it is undeveloped. It is true that "we may affirm the circuit court if it reached the correct result but for the wrong reason," *State v. Chitwood*, 2016 WI App 36, ¶34, 369 Wis. 2d 132, 879 N.W.2d 786, but we will not abandon our neutrality to develop arguments, *see M.C.I., Inc. v. Elbin*, 146 Wis. 2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988). The new argument is not based on Wisconsin precedent on any topic or on precedent from any jurisdiction addressing the automobile exception. Beyond that, there are significant, independent omissions in the new argument that Phillips advances on appeal. It is sufficient to cite two, both major.

¶47 First, Phillips fails even to attempt to explain at what point the seizure of the pickup, if it was lawful at its inception under the automobile exception, became constitutionally unreasonable and what facts that are in the record would be relevant to determine when it became unreasonable.

¶48 Second, Phillips entirely fails to come to terms with one side of the equation that would be pertinent under the federal case law that she newly cites on appeal: the governmental interests in seizing, retaining, and searching a vehicle that police had reason to suspect had just been involved in the death of a person. *See United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015) (determining whether delay between the seizure of an item and the issuance of a search warrant is constitutionally unreasonable is based on the "totality of the circumstances, not whether the [g]overnment pursued the least intrusive course of action," and involves a balancing of "'nature and quality of the intrusion on the individual's

23

Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion'" (quoting ***United States v. Place***, 462 U.S. 696, 703 (1983))).

¶49 Turning to the circuit court's reliance on ***Jones*** on the search-warrant-delay topic, Phillips concedes through silence that the State is correct when it argues that ***Jones*** has no bearing on the issue of whether the State held the pickup for an unreasonable period of time after a seizure that we determine was valid under the automobile exception. "Respondents on appeal cannot complain if propositions of appellants are taken as confessed which they do not undertake to refute." ***State ex rel. Blank v. Gramling***, 219 Wis. 196, 199, 262 N.W. 614 (1935) (quoted in ***Charolais Breeding Ranches, Ltd. v. FPS Sec. Corp.***, 90 Wis. 2d 97, 279 N.W.2d 493 (Ct. App. 1979)).

¶50 Further, Phillips failed to present the new argument as a basis for suppression in the circuit court, as the court's evidentiary rulings confirm, with one result being that the State was not allowed to offer evidence that could have supported an argument on this topic. That is, Phillips failed to preserve an argument in the circuit court that, even if the automobile exception applies, the State violated the Fourth Amendment by holding the pickup for 20 days before obtaining a search warrant that was promptly executed, and as a result, the parties did not have an opportunity to offer all relevant evidence. Now on appeal, Phillips references topics that could be potentially relevant to her new argument that are not part of the record, such as reasons why she never initiated communications with police regarding the status of her seized pickup. *See* ***Sullivan***, 797 F.3d at 633-34 ("an individual who did 'not even allege[], much less prove[], that the delay in the search of packages adversely affected legitimate interests protected by the Fourth Amendment' and 'never sought return of the property' has not made a

24

sufficient showing that the delay was unreasonable" (alterations in original) (quoting *United States v. Johns*, 469 U.S. 478, 487 (1985))). But the record is closed. Phillips objects that the prosecution failed to offer a "reasonable explanation for why [police] kept the Dodge Ram secured without a warrant for twenty days." But, as explained above, the prosecution was not on notice in the circuit court that evidence on that topic would be relevant to the only issue Phillips identified in raising and pursuing the suppression motion.

## CONCLUSION

¶51 For all these reasons, we reverse the order directing that the pickup truck and all evidence from the pickup truck be suppressed.

*By the Court*.—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.