COURT OF APPEALS
DECISION
DATED AND FILED

July 23, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP1199-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2020CF91

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JULIA JEAN JULIEN,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for St. Croix County: SCOTT R. NEEDHAM, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Julia Julien appeals a judgment, entered upon a guilty plea, convicting her of one count of possession of methamphetamine as a

party to a crime. Julien asserts that the circuit court erred by denying her motion to suppress evidence obtained through a warrantless search of her vehicle. For the reasons that follow, we affirm.

## BACKGROUND

¶2 Julien was charged with one count of possession of methamphetamine and one count of possession of drug paraphernalia, both counts as a party to a crime and as a repeater. The charges arose after law enforcement conducted a warrantless search of her vehicle, which was parked on another person's property. Later, Julien filed a motion to suppress evidence obtained as a result of the vehicle search.

¶3 At the suppression hearing, St. Croix County Sheriff's Department investigator Michael O'Keefe testified that law enforcement had planned to execute a search warrant for Chad Johnson's property.[1] The warrant stated that law enforcement were permitted to search a particular "single family dwelling

---

[1] On appeal, Julien includes in her appendix a "Google Maps Satellite View" of Johnson's property that was never submitted into the circuit court record. A party's appendix may not be used to supplement the appellate record. *Reznichek v. Grall*, 150 Wis. 2d 752, 754 n.1, 442 N.W.2d 545 (Ct. App. 1989). In her reply brief, Julien asserts that we can take judicial notice of the Google Maps image. Because the State did not have an opportunity to rebut this assertion, we will not consider whether judicial notice is appropriate under these circumstances, particularly where the State has previously expressed reliability concerns about Google Maps satellite images. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 493, 588 N.W.2d 285 (Ct. App. 1998); *State v. Jenkins*, No. 2020AP1243-CR, unpublished slip op. ¶14 & n.4 (WI App Mar. 1, 2022) ("The State identifies several concerns regarding the reliability of the screenshot obtained from Google Maps, including questions regarding when the image was recorded and whether the image accurately depicts the [area in question during the incident in question]."). Accordingly, we will not consider the Google Maps image in our analysis.

Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

with a detached garage" (i.e., Johnson's property) for, among other things, any evidence related to drug use. Prior to executing the search warrant, officers observed Johnson and Julien leaving the property together in a vehicle. Upon stopping the vehicle driven by Johnson and locating illegal contraband in the vehicle, officers arrested both Julien and Johnson. The traffic stop occurred less than one-half mile from Johnson's property.

¶4 New Richmond Police Department Officer Katie Chevrier testified that she reported to Johnson's property with her trained canine unit to help execute the search warrant. Upon her arrival at the property, Chevrier observed one blue vehicle on the east side of the property's driveway and two vehicles, one silver and one red, on the west side of the driveway.[2] The red vehicle was parked in front of the silver vehicle, with the latter vehicle being closer to the road and the start of the driveway than the former. Chevrier deployed her canine in the driveway and the canine eventually alerted to the presence of drugs in the silver vehicle, which was later determined to be owned by Julien. Based on the canine's alert, law enforcement searched Julien's vehicle and located methamphetamine and syringes.

¶5 Julien did not present any evidence at the suppression hearing. In a posthearing brief, Julien argued that law enforcement exceeded the scope of the search warrant by searching her vehicle. She also argued that the "automobile exception" to the Fourth Amendment did not apply to the search.

---

[2] Officer Chevrier stated that she arrived at the property following Julien's arrest. According to Chevrier, the canine was trained at detecting "[m]arijuana, heroin, methamphetamines, and cocaine," and when the canine detects a drug in a particular area, the canine will alert by staring and pointing with its nose toward the alleged drug.

¶6      The circuit court determined that Julien failed to demonstrate, by a preponderance of the evidence, that she had standing to challenge the scope of the search warrant executed on Johnson's property. The court reasoned that Julien was a guest at Johnson's property, but she had failed to establish any other factors favoring a finding that she had a privacy interest in the area surrounding her vehicle while it was parked on Johnson's driveway. Furthermore, the court found that the canine's exterior sniff of her vehicle was not a "search" under the Fourth Amendment and that law enforcement's subsequent search of the vehicle was permissible pursuant to the automobile exception.

¶7      Julien ultimately entered into a plea agreement, whereby she pled guilty to an amended count of possession of methamphetamine as a party to a crime. This appeal follows.

## DISCUSSION

¶8      "Whether evidence should be suppressed is a question of constitutional fact subject to a two-step inquiry." *State v. Wilson*, 2022 WI 77, ¶17, 404 Wis. 2d 623, 982 N.W.2d 67. First, we uphold a circuit court's findings of fact unless they are clearly erroneous. *Id.*, ¶18. Second, we apply constitutional principles to those facts de novo. *Id.*

## I.      Standing to challenge the scope of the search warrant

¶9      The Fourth Amendment guarantees, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures, shall not be violated."[3]  U.S. CONST. amend. IV.  The person challenging a search or seizure must have standing to assert such a claim.  *State v. Fox*, 2008 WI App 136, ¶10, 314 Wis. 2d 84, 758 N.W.2d 790.  In the Fourth Amendment context, an inquiry into standing asks "whether the person claiming a constitutional violation 'has had his [or her] own Fourth Amendment rights infringed by the search and seizure which he [or she] seeks to challenge.'"  *Byrd v. United States*, 584 U.S. 395, 403 (2018) (citation omitted).  "A person has standing under the Fourth Amendment when he or she 'has a legitimate expectation of privacy in the invaded place.'"  *Fox*, 314 Wis. 2d 84, ¶10 (citation omitted); *Byrd*, 584 U.S. at 403.

¶10  We employ a two-part test "when determining whether an individual has a reasonable expectation of privacy in an area."[4]  *Fox*, 314 Wis. 2d 84, ¶16.  "The first part of this test asks whether the individual has demonstrated an actual, subjective expectation of privacy in the area searched and in the item seized.  The second part addresses 'whether society is willing to recognize such an expectation of privacy as reasonable.'"  *Id.* (citation omitted).  Although the ultimate inquiry depends on the totality of the circumstances, we use six factors to guide our

---

[3] The Wisconsin Constitution contains nearly identical protections, *see* WIS. CONST. art. I, § 11, which Wisconsin courts have interpreted "consistent with its federal counterpart."  *State v. VanBeek*, 2021 WI 51, ¶23, 397 Wis. 2d 311, 960 N.W.2d 32.  Julien does not argue that this principle should not apply to the facts of this case.

[4] Julien criticizes the State for citing to case law discussing reasonable expectation of privacy in the non-standing context.  While it is true that "[w]hether a warrant is required is a separate question from … whether the person claiming a constitutional violation 'has had his [or her] own Fourth Amendment rights infringed by the search and seizure which he [or she] seeks to challenge,'" the analyses are largely the same.  *See Byrd v. United States*, 584 U.S. 395, 403 (2018) (citation omitted).  In fact, Julien herself cites to case law analyzing, in the warrant context, whether an individual has a reasonable expectation of privacy.

analysis of whether an individual's expectation of privacy was objectively reasonable:

> (1) whether the defendant had a property interest in the premises; (2) whether he [or she] was legitimately (lawfully) on the premises; (3) whether he [or she] had complete dominion and control and the right to exclude others; (4) whether he [or she] took precautions customarily taken by those seeking privacy; (5) whether he [or she] put the property to some private use; and (6) whether the claim of privacy is consistent with historical notions of privacy.

*See* ***State v. Dumstrey***, 2016 WI 3, ¶47, 366 Wis. 2d 64, 873 N.W.2d 502 (alterations in original; citation omitted); ***State v. Bowers***, 2023 WI App 4, ¶19, 405 Wis. 2d 716, 985 N.W.2d 123 (2022). Importantly, the defendant bears the burden of establishing, by a preponderance of the evidence, that he or she has standing.[5] ***Fox***, 314 Wis. 2d 84, ¶10.

¶11 Most of Julien's standing arguments on appeal relate to her privacy interest *in* her vehicle. There is no question on appeal, however, that Julien had a reasonable expectation of privacy in her vehicle. Additionally, the State concedes that the search warrant's scope did not extend to the interior of Julien's vehicle.

¶12 The success of Julien's Fourth Amendment claim does not derive from these facts. Rather, the issue here is if Julien had standing to challenge whether law enforcement were permitted to be in the area *surrounding* Julien's vehicle, which was parked on Johnson's property. The fact that Julien had a reasonable expectation of privacy in the interior of her vehicle does not necessarily entitle her to an expectation of privacy in the driveway where her vehicle was

---

[5] "[P]reponderance of the evidence" means "more likely than not." *See* ***State v. Rodriguez***, 2007 WI App 252, ¶18, 306 Wis. 2d 129, 743 N.W.2d 460.

parked. The State correctly argues on appeal that if Julien wished to challenge not just the search of her vehicle but also law enforcement's use of the canine in the area of Johnson's property where her vehicle was parked, Julien had the burden to demonstrate, by a preponderance of the evidence, that she held a legitimate expectation of privacy in *both* places.

¶13 Turning to the merits of Julien's standing to challenge the scope of the search warrant, under the first part of the reasonable-expectation-of-privacy test, we assume that by parking her vehicle on Johnson's driveway, Julien subjectively expected a greater degree of privacy than she would have if the vehicle were parked in the street. Under the second part of the test, we assume that Julien put Johnson's driveway to some private use by parking her vehicle there.[6] *See Dumstrey*, 366 Wis. 2d 64, ¶47. In addition, we acknowledge that Julien's vehicle was lawfully parked in Johnson's driveway. *See id.* However, that factor does not dictate the outcome of our analysis. *See Byrd*, 584 U.S. at 404-05 (concluding that an individual's "legitimate presence on the premises of the place searched … is not enough to accord a reasonable expectation of privacy"); *Rakas v. Illinois*, 439 U.S. 128, 148 (1978) ("We would not wish to be understood as saying that legitimate presence on the premises is irrelevant to one's expectation of privacy [for purposes of standing], but it cannot be deemed controlling.").

---

[6] We are assuming these facts because it is unclear from the record who parked Julien's vehicle in the driveway or, if Julien was the person who parked in the driveway, why she did so. Notably, Julien did not testify at the suppression hearing, and she presented no other evidence. However, these assumed facts do not alter our conclusion.

¶14 On the record before us, the remaining ***Dumstrey*** factors, when considered together, weigh heavily against Julien's claim of a privacy interest in the area of Johnson's property where her vehicle was parked. First, Julien does not claim that she had a property interest in Johnson's property. *See **Byrd***, 584 U.S. at 403 (stating that "property concepts," while not dispositive, "are instructive in 'determining the presence or absence of the privacy interests protected by [the Fourth] Amendment'" (citation omitted)).

¶15 Second, Julien failed to show that she had "complete dominion and control" over Johnson's property or the right to exclude others from the property. *See **Dumstrey***, 366 Wis. 2d 64, ¶47. Julien never provided any evidence demonstrating what type of guest she was at Johnson's property or her relationship with Johnson. For example, there is no evidence suggesting that she was an overnight guest or that she frequently stayed at the home.[7] *See **Minnesota v. Carter***, 525 U.S. 83, 90 (1998) ("[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not."); ***Fox***, 314 Wis. 2d 84, ¶20 ("[I]f the guest's relationship with the host and the host's property is more firmly rooted, a guest may have standing to challenge a search." (citation omitted)).

¶16 Third, aside from Julien apparently parking her vehicle in the driveway, there was no evidence presented demonstrating that she took

---

[7] The only evidence in the record regarding the length of Julien's stay demonstrated that her vehicle was parked in Johnson's driveway for at least six hours, or the whole time law enforcement were surveilling Johnson's home the day of the search. Moreover, investigator O'Keefe testified that Julien's name had not come to law enforcement's attention during its investigation of Johnson and that O'Keefe learned of Julien's existence for the first time on the day of her arrest.

precautions to protect her privacy. For example, there is no evidence of a fence around the property prohibiting entrance by third parties. *See State v. Krull*, No. 2019AP370-CR, unpublished slip op. ¶21 (WI App June 2, 2020) ("A driveway is traditionally used to access a property, and one would generally expect a driveway that is not gated or blocked in any way to be open for use by individuals other than the property owner—such as friends, delivery people, or service providers like plumbers and electricians."). Nor was Julien's vehicle parked within a garage. On the record before us, it appears that any third party could access the property and, more specifically, the driveway. *See State v. Trecroci*, 2001 WI App 126, ¶35, 246 Wis. 2d 261, 630 N.W.2d 555.

¶17    In addition, Julien agrees that her vehicle was not parked within the curtilage of Johnson's home. *See United States v. Dunn*, 480 U.S. 294, 300 (1987) ("[T]he Fourth Amendment protects the curtilage of a house and … the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself."). Indeed, Julien's vehicle was parked behind—that is, closer to the road and the start of the driveway than—the only other vehicle on the west side of the driveway. And, as Julien concedes, her vehicle was visible and accessible to anyone who wanted to enter the property's driveway from the public road.

¶18    Fourth, Julien failed to demonstrate to the circuit court—or this court for that matter—that her claim of privacy is consistent with historical notions of privacy. *See Dumstrey*, 366 Wis. 2d 64, ¶47. We are unaware of any case, nor has Julien cited any, where a court has held that a non-overnight guest at someone's home is expected to have a degree of privacy in the home-owner's driveway, particularly where the driveway is neither within the curtilage of the home nor blocked to third-party access.

¶19 Julien attempts to liken this case to ***United States v. Whitaker***, 820 F.3d 849 (7th Cir. 2016), where the United States Court of Appeals for the Seventh Circuit held that law enforcement cannot use a "super-sensitive instrument," such as a canine, to "detect objects or activities inside" an individual's home, including an apartment, without a search warrant. ***Id.*** at 853 (citation omitted). In ***Whitaker***, law enforcement used a canine to detect narcotics from a locked, shared hallway outside of the defendant's apartment door. ***Id.*** at 850. According to the court, the canine "detected something (the presence of drugs) that otherwise would have been unknowable without entering the apartment" in violation of the defendant's reasonable expectation of privacy in his home. ***Id.*** at 853 (relying on ***United States v. Jardines***, 569 U.S. 1, 12-13 (2013) (Kagan, J., concurring)). The court stated that "the fact that this was a search of a home distinguishes this case from dog sniffs in public places" because the "Fourth Amendment's core concern [is] protecting the privacy of the home." ***Id.***

¶20 ***Whitaker*** is unhelpful to determine whether Julien had a reasonable expectation of privacy in the area surrounding her vehicle. The issue at hand does not involve a search of Julien's home and, thus, the reasoning in ***Whitaker*** is inapplicable.

¶21 For the reasons articulated above, Julien failed to demonstrate to the circuit court, by a preponderance of the evidence, that she had a reasonable expectation of privacy in the area surrounding her vehicle on Johnson's property. Accordingly, Julien lacks standing to challenge the scope of the search warrant for Johnson's property.

## II.    Warrantless search of vehicle

¶22    The question then becomes whether law enforcement's warrantless entry into and search of Julien's vehicle were unconstitutional.  Although the canine's exterior sniff of Julien's vehicle was not a search within the meaning of the Fourth Amendment, *see Illinois v. Caballes*, 543 U.S. 405, 410 (2005), "[t]here is no question that entering a person's car and searching items inside it constitutes a search," *State v. Miller*, 2002 WI App 150, ¶11, 256 Wis. 2d 80, 647 N.W.2d 348.  Under the so-called automobile exception, "the warrantless search of a vehicle does not offend the Fourth Amendment if (1) there is probable cause to search the vehicle; and (2) the vehicle is readily mobile."  *State v. Marquardt*, 2001 WI App 219, ¶31, 247 Wis. 2d 765, 635 N.W.2d 188.  On this matter, the State bears the burden of establishing the applicability of the automobile exception.  *See State v. Denk*, 2008 WI 130, ¶36, 315 Wis. 2d 5, 785 N.W.2d 775.

¶23    Julien concedes that law enforcement had probable cause to search her vehicle after the canine alerted to the presence of drugs inside of her vehicle. *See Miller*, 256 Wis. 2d 80, ¶¶12-13.  Julien argues, however, that her vehicle was not readily mobile because she was in custody at the time law enforcement searched it and law enforcement had secured Johnson's property, thereby "excluding anyone else from accessing or moving" the vehicle.  She also asserts the State presented no evidence showing that any other individual had access to the vehicle's keys.

¶24    Julien's arguments are unsupported by relevant authority.    In *Marquardt*, Marquardt was arrested at his home, where his locked vehicle was parked in the driveway.  *Marquardt*, 247 Wis. 2d 765, ¶5.  Following his arrest, law enforcement transported the vehicle to a police department, where it was then

searched. *Id.* Two days later, the vehicle was transported to the State Crime Laboratory where it was again searched. *Id.* Law enforcement never obtained a warrant to search or seize the vehicle. *Id.*

¶25 As is relevant here, Marquardt argued on appeal that the State failed to demonstrate the applicability of the automobile exception because his vehicle was not readily mobile once he was arrested. *Id.*, ¶40. This court declined to address the argument "in detail" because Marquardt did not raise the issue in the circuit court and he failed to provide any supporting authority. *Id.*, ¶41. We noted, however, that a "brief survey of the applicable case law assure[d] us that the argument lack[ed] merit." *Id.* In particular, we concluded that Marquardt's vehicle was "in working order on the day he was arrested" and that a defendant's arrest "indeed make[s] the car less accessible …, but [it] do[es] not make it less mobile." *Id.*, ¶¶40, 42 (citation omitted). We concluded that Marquardt's "arrest would not prevent other unknown individuals from moving the vehicle." *Id.*, ¶42. In addition, we were "not concerned by the fact that the car was seized and impounded before it was searched" because the United States Supreme Court "has held that the justification to conduct a warrantless search does not vanish once the car has been immobilized." *Id.*, ¶43 (citing *United States v. Johns*, 469 U.S. 478, 484 (1985)).

¶26 In short, *Marquardt* directs that the readily mobile test requires the State to show only that the vehicle searched has the ability to be mobile. *See also* **State v. Pallone**, 2000 WI 77, ¶60, 236 Wis. 2d 162, 613 N.W.2d 568, *overruled on other grounds by* **State v. Dearborn**, 2010 WI 84, 327 Wis. 2d 252, 786 N.W.2d 97 ("Even when a vehicle is not in motion, its ability to be readily

mobile will justify a warrantless search, provided that the overriding standard of probable cause is met.").[8]

¶27    In this case, Julien's vehicle was parked in another individual's driveway.  Law enforcement had not been aware of Julien's existence before her arrest and were therefore permitted to assume that Julien had driven the vehicle to Johnson's home and that the vehicle was in working order.  Moreover, Julien's arrest "would not prevent other unknown individuals from moving the vehicle." *See Marquardt*, 247 Wis. 2d 765, ¶42.  In fact, the record demonstrates that Johnson's mother was at the property during law enforcement's execution of the search warrant and could have moved the vehicle.  It was also reasonable for law enforcement to assume that Julien could have called for someone to pick up the vehicle or that Julien would be released quickly after her arrest because she was not the subject of the investigation into Johnson.  Therefore, the State satisfied the automobile exception, and the search of Julien's vehicle did not violate the Fourth Amendment.

> *By the Court.*—Judgment affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] Further, the State is not required to demonstrate that an exigency existed at the time of the vehicle search. ***State v. Marquardt***, 2001 WI App 219, ¶31, 247 Wis. 2d 765, 635 N.W.2d 188.  Thus, the fact that law enforcement had secured the scene does not impact our analysis.